SCHOLBERG, Respondent, vs. ITNYRE, Appellant.

*May 5—June 2, 1953.*

For the appellant there was a brief by *Bosshard & Arneson* of La Crosse, attorneys, and *Toebaas, Hart, Kraege & Jackman* of Madison of counsel, and oral argument by *Oscar T. Toebaas* and *Philip G. Arneson*.

For the respondent there was a brief by *Johns, Roraff, Pappas & Flaherty* of La Crosse, and oral argument by *Robert D. Johns*.

BROWN, J.   The complaint states that in 1934 when plaintiff was five years old her parents were divorced and plaintiff's custody was given to her mother.  Notwithstanding this separation plaintiff received from her father usual paternal love, affection, maintenance, and support until 1941.  At that time plaintiff's father took defendant as his mistress and kept her until his death in 1952.  Plaintiff alleges that, in ways specified in the complaint, defendant intentionally alienated the father's affections from his child so that the relationship between father and daughter "became strained, awkward, and cool, and that thereby plaintiff was deprived of the love, affection, and guidance which a minor child needs, deserves, and expects from her father, and that plaintiff's father refused and neglected to aid and support plaintiff in her efforts to obtain an education, and in many other material and financial ways, all to plaintiff's damage in the sum of one hundred thousand ($100,000) dollars."

The demurrer raises the question of whether in Wisconsin a child has a cause of action against a third party for the alienation of the affections of its parent.  The learned trial court followed the decisions of *Miller v. Monsen* (1949), 228 Minn. 400, 37 N. W. (2d) 543, and *Daily v. Parker* (7th Cir. 1945), 152 Fed. (2d) 174, in which such a right

was declared, and also relied upon sec. 9, art. I of the Wisconsin constitution providing that every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property, or character.

"The constitutional guaranty insuring a remedy for 'injuries' to person and property, etc., does not guarantee a remedy for every species of injury, but only such as results from an invasion or an infringement of a legal right or a failure to discharge a legal duty. . . ." 16 C. J. S., Constitutional Law, p. 1496, sec. 709.

Accordingly, for this constitutional guaranty to be pertinent, it must first be established that plaintiff has suffered a legal injury or wrong by reason of defendant's conduct.

The only cause of action at common law for alienation of affections was that of a husband for the alienation of the affections of his wife. In *Duffies v. Duffies* (1890), 76 Wis. 374, 45 N. W. 522, a wife brought suit against her mother-in-law for the alienation of the affections of plaintiff's husband. We held that because a wife had no such right of action at common law, in the absence of a statute giving it to her, we must sustain a demurrer *ore tenus.* At common law, likewise, a child had no action against a third party for injury to his relation with his parent. 12 A. L. R. (2d), note at page 1179, citing Cooley, Torts, and Pound, Individual Interests in the Domestic Relations. No Wisconsin statute confers such a right.

The analogy between the marital and the parental relationship is not perfect but the common-law status of a wife and a minor child was alike at least in this, that neither had a right of action for the alienation of the affections of a husband or father. The opinion in the *Duffies Case, supra,* pointed out that questions of public policy were involved which made a change in the law a fit subject for the consideration of the legislature rather than the courts. In 1903 we affirmed and followed the *Duffies* decision in *Lonstorf v. Lonstorf* (1903),

118 Wis. 159, 95 N. W. 961, after which the legislature, by an amendment to sec. 2345, Stats., ch. 17, Laws of 1905, added to a wife's rights the right to bring and maintain an action for the alienation of her husband's affections. Now, half a century later, we have essentially the problem which was before us in the *Duffies Case, supra,* and we are again invited to invade what then we considered was the legislative field.

Respondent submits that the modern conception of domestic relations, particularly in respect to a father's powers and obligations, differs radically from that which prevailed even in the recent past and correctly states that, in our common-law system, courts may modify their old precedents to suit the current ideas of justice. Some courts have made such modifications in cases similar to the one before us. Notable examples are *Daily v. Parker, supra,* and *Miller v. Monsen, supra,* which the learned trial court followed in overruling the present demurrer. However, a majority of the courts which have had this question have either doubted the wisdom of a change or have thought that such reform was a legislative function. For various reasons they have held that the action will not lie. (See the note at page 1181 to *Henson v. Thomas* (1949), 231 N. C. 173, 56 S. E. (2d) 432, reported in 12 A. L. R. (2d) 1171.)

We are also asked to observe the numerous respects in which recent legislatures have extended protection to children and the argument is made that this indicates that public policy requires that a child may now maintain an action like the one before us. Probably the reverse argument is as legitimate,—that a legislature, concerned with child welfare which did not grant this right, withheld it for good and sufficient reasons. The public policy is far from clear. The present complaint alleges that a paramour diverted the cash, counsel, and caresses which otherwise would have come to the child. But if this plaintiff may sue, may not another child who

alleges that she suffers like loss from quite different competition also bring action against those who, she claims, have interested her parent in activities inconsistent with the attention which the plaintiff considers her due? Are children thus to control their parents' interests and associations? Do the business and social acquaintances of the parent stand before juries at the summons of a jealous child? Or is the possibility of abuse such that public policy, which already has imposed on fathers the legally enforceable obligation of child-support, is content to stop there without giving to the child a right of action against the parent's associates with whom the child is displeased? Hitherto, in this state, no such right has been recognized and the question is just as it was when, in the *Duffies* and *Lonstorf Cases, supra,* wives claimed rights which previously they had not held. We think the court acted judiciously then in referring the claimant to the legislature. We still believe that the creation of new rights is a question for the consideration and determination of the legislature, a function which the courts should not usurp. We conclude that appellant's demurrer should have been sustained.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with the opinion.