HAYRYNEN v. WHITE PINE COPPER COMPANY.

1. PARENT AND CHILD—LOSS OF COMPANIONSHIP—INJURED PARENT.
Little statutory or prior judicial authority exists at the present time with respect to the protection and enforcement of a right of recovery for loss of companionship and injury by the children of a nonfatally injured parent.

2. SAME—CAUSE OF ACTION—TORT-FEASOR.
Courts have not recognized an independent right of action in children to recover against a tort-feasor for loss of parental attention, training, affection, and support caused by non-fatal injuries to the parent.

3. SAME—NEGLIGENCE—LOSS OF LOVE AND COMPANIONSHIP.
Actions by a child to recover for the loss of love and companionship of a parent caused by negligent nonfatal injury are universally dismissed by the courts.

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 39 Am Jur, Parent and Child § 71.
Child's right of action, for loss of support, training, parental attention and the like, against third person negligently injuring parent. 59 ALR2d 454.
[5] 7 Am Jur 2d, Automobiles and Highway Traffic § 108.
[6] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 93, 94.
[7] 1 Am Jur 2d, Actions § 1.

4. Negligence—Parent and Child—Cause of Action.

> Children of a parent negligently injured by another *held,* not to have a cause of action against the person causing nonfatal injuries to the parent.

5. Automobiles—Highways—Driver's License Re-examination— Third-Party Beneficiary Contract.

> Third-party beneficiary contract *held,* not to be created where a person, on re-examination for the retention of his driver's license by an official of the office of the secretary of State, agrees to comply with Michigan's motor vehicle laws.

6. Same—Driver's License.

> A license to drive an automobile is a privilege dispensed by the State.

7. Action—Definition—Damages.

> A *cause of action* consists of a plaintiff's right and defendant's violation of that right, or the breach of a legal duty resulting in damage to plaintiff.

Appeal from Ontonagon; Wright (Robert R.), J. Submitted Division 3 October 6, 1967, at Marquette. (Docket No. 2,111.)   Decided March 18, 1968.

Complaint by Kelley Hayrynen and Kathy Hayrynen, by their father and next friend, Douglas Hayrynen, against White Pine Copper Company, a foreign corporation, and William Briski for loss of companionship, love and affection, support, and mental strain, agony, torment, and distress by reason of injuries suffered by their father. Summary judgment for defendants. Plaintiffs appeal. Affirmed.

*Wisti, Jaaskelainen & Schrock,* for plaintiffs.

*Humphrey & Weis* for defendants.

Fitzgerald, P. J.   The plaintiffs in this appeal are the minor children of Douglas Hayrynen, who

was injured in an automobile accident on December 16, 1961, which to date has produced a multitude of lawsuits, this being the only one to reach the appellate level.

Briefly, the accident happened as follows: Douglas Hayrynen was a passenger in an automobile returning to his home in South Range, Michigan, from his place of employment, the White Pine Copper Company in White Pine. The vehicle in which he was a passenger was owned and operated by William F. Stone. There were 4 other passengers in this vehicle in addition to the driver and Hayrynen. While operating the vehicle on the roadway known as the Greenland road in Ontonagon county, the vehicle of the defendant White Pine Copper Company, operated by its employee, William Briski, attempted to pass another vehicle in a no-passing zone and, as a result, collided head-on with the vehicle in which Hayrynen was a passenger. As a result of this collision, the driver of the vehicle in which Hayrynen was a passenger was killed and the 5 passengers were seriously injured.

Previous lawsuits by the passengers of the Stone vehicle included separate legal actions against the defendants herein, which suits were joined in by the wives of the injured parties. The case of the driver was tried first and resulted in a substantial award to the widow of the deceased driver of the vehicle in which Hayrynen was injured. In this particular case, the question of liability was determined by the jury and likewise the question of damages.

Subsequent cases, including Hayrynen's own case, were likewise tried and the liability of the defendants was admitted, the cases being tried only on the question of damages.

The instant case presents 2 novel questions, brought as it is by the minor children of Douglas

Hayrynen.   While the previous cases involve a
cause of action by the injured parties themselves,
or their wives suing for loss of consortium, this
case was commenced in the circuit court for the
county of Ontonagon by Hayrynen's minor children.
In charging defendants with willful and wanton
negligence, they assert that they had, as a result of
this accident, suffered and sustained a loss of com-
panionship, love and affection of their father and
that they had suffered loss of support and mental
strain, agony, torment, and distress by reason of
the injuries suffered by the father.

Defendants filed their answer to the complaint
and, in addition, filed a motion for summary judg-
ment alleging that the complaint failed to state a
cause of action against the defendant.   Following
oral arguments and the filing of briefs on the de-
fendants' motion for summary judgment, the court
entered an order allowing defendants' motion for
summary judgment, and it is from this order that
plaintiffs appealed to this Court.

Two novel questions are placed before us.   The
first question asked is whether the children of a
parent negligently injured by another have a cause
of action against the person causing the injuries to
the parent.   This should perhaps be narrowed down
to a slightly more succinct definition of their sug-
gested cause of action as set forth in the instant
case, *i.e.,* whether they have a legally protectible
interest in their familial relationship with their
father.

The second question, more ingenious, asks whether
a third-party beneficiary contract is created where
a person, on re-examination for the retention of his
driver's license by an official of the office of the
secretary of State, agrees to comply with Michigan's
motor vehicle laws and subsequently injures some-
one on the highways of this State.

Turning first to the question of the possibility of recovery for loss of companionship and injury by the children of an injured parent, we are forced to conclude with appellants that "there is little statutory or prior judicial authority at the present time with respect to the protection and enforcement of this right."

The sole case that appellant cites, with even an oblique application to this case, appears in the decision of the Federal district court for the western district of Michigan, *Russick* v. *Hicks* (1949), 85 F Supp 281. This case furnishes us little precedent and scant comfort to the plaintiffs since it does not deal with an automobile negligence case. Indeed, it involves an action against a third party for enticing a parent from the family home. The gulf between the 2 types of action will not be bridged by this Court just as it has not been bridged by any court in the past.

"It is apparent that one suffering physical injury not resulting in death may, as a result, be unable to give his minor children parental attention, training, affection, support, et cetera, in the same degree as he might have done but for the injury. This annotation seeks to determine whether the courts have recognized an independent right of action in the children to recover against the tort-feasor for such loss. The question posed may be answered briefly and in the negative. Any trend in other fields toward liberality in extending the right to recover for injury to 'consortium' has not been apparent in the situation here discussed, so that it appears to be the universally accepted rule at the present time that no such right of action exists." 59 ALR2d 454.

A further definitive statement on this subject appears in 61 Columbia Law Review, p 1347, in the following words:

"The child, in contrast to the other members of the immediate family, has received little or no judicial protection of his familial interests. There appears to have been no instance at common law of a suit by a child for injury to or interference with his relationship with his parents, perhaps because a child clearly had no right to the services of a parent. Even today, suits by a child to recover for the loss of love and companionship of a parent caused by negligent injury are universally dismissed by the courts."

Likewise, the case of *Montgomery* v. *Stephan* (1960), 359 Mich 33, while containing a scholarly and absorbing dissertation on the term "consortium" and all it implies, appears to us to offer little support to the claim of plaintiff that children have a derivative, or even comparable, cause of action.

Accordingly, we hold that the trial court acted properly in granting the summary judgment on this particular ground.

On the second question presented to us, *i.e.,* whether a third party beneficiary contract was created during the interview that the defendant Briski had with a representative of the secretary of State's office, enabling these plaintiffs to maintain a cause of action, we feel that we, too, may be summary in our judgment and answer the question: no.

Plaintiff states that:

"By the improper operation of the vehicle by the defendant William Briski for and on behalf of the defendant White Pine Copper Company, this agreement (to be a good driver) was violated and the father of the plaintiffs was injured and as a result the plaintiffs have a legally enforceable right to demand protection under this third-party beneficiary contract."

In addition to a lack of proof, as shown by the record, that the defendant's license was not sus-

pended because he definitively agreed or promised to be a good driver, there is likewise no showing of the creation of any kind of contract. If promise there was, it was unilateral, conferring, in a sense, no benefits on the State, a license to drive being merely a privilege dispensed by the State. The State promised him nothing and we can find no authority that a revocation interview, such as this, creates a legal right in anyone, save, perhaps, the State, which may remove or suspend the license with alacrity upon the failure of the licensee to be a good driver, promise or not.

A "parade of horribles" is conjectured by the defendants in this case if such a cause of action were created. Such a showing we do not think is necessary, particularly the specter that 8 million people might one day become beneficiaries of such interviews.

The simple and elemental fact remains that no third-party beneficiary contract was created by the interview between defendant and the State of Michigan; but over and above this, it is patent that the children of a negligently injured parent have no cause of action such as suggested in the instant suit.

In the absence of authority, we concur with the observation in *Inglis* v. *Public School Employees Retirement Board* (1964), 374 Mich 10, wherein it was said, citing 1 MLP, Action, § 3, p 108:

"In accordance with the generally approved definition of 'cause of action,' as consisting of plaintiff's right and defendant's wrong, it is necessary to give rise to a cause of action that there be a violation of some positive legal right, or the breach of a legal duty resulting in damage to plaintiff."

Judgment of the trial court affirmed. Costs to appellees.

BURNS and HOLBROOK, JJ., concurred.