Lanny J. HANKINS, by Albert Hankins, his father and next friend, Appellant,

v.

Leo W. DERBY and Raymond J. Boyle, Appellees.

No. 55438.

Supreme Court of Iowa.

Oct. 17, 1973.

Paul W. Deck Law Office and Richard L. McCoy, Sioux City, for appellant.

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, and Marvin F. Heidman, Sioux City, for appellee Boyle.

Shull, Marshall, Marks & Vizintos, and Charles R. Wolle, Sioux City, for appellee Derby.

REES, Justice.

This is a permissive appeal from trial court's order sustaining motions of defendants, separately filed, to strike amendments to plaintiff's petition.

In his original petition, the minor plaintiff alleged he was injured while a passenger in an automobile driven by his mother; that while the automobile in which he was an occupant was halted in a line of traffic, it was struck from the rear by the vehicle of defendant Derby, and that a vehicle driven by defendant Boyle, in turn, struck the Derby vehicle causing it to again come into collision with the automobile occupied by plaintiff.

Plaintiff's original petition contained the usual allegations of physical injuries to the plaintiff, alleging that he had suffered pain, had been incapacitated and incurred medical expense. In the amendments which were stricken on motion, plaintiff alleged as against both defendants that his mother, Bonnie R. Hankins, had incurred injuries to her neck and body requiring medical and hospital care and treatment, that she was for a time totally disabled and would in the future be disabled to some degree, that she had endured physical pain and suffering and will endure further physical pain and suffering in the future.

Plaintiff further alleged that as the result of the injuries to his mother as aforesaid, he had been deprived, and would continue to be deprived in the future, of the family relationship, loss of companionship and association, the care, attention, kindness, maternal guidance, comfort and solace

of his mother's society, for which he demanded judgment against the defendants and each and both of them.

Separate motions to strike were filed by defendants Boyle and Derby. They were argued and submitted together, and the motions to strike the amendments to the plaintiff's petition were sustained. From the order sustaining such motions, plaintiff appeals.

I. Concededly, the argument advanced by plaintiff in seeking to reverse the ruling of trial court has a great emotional appeal. No one questions the fact a child has an interest in the maintenance of a viable family relationship and in all the benefits derived from the family circle. The legislative branch of the government may properly give the interest of a child in a case such as this legal sanction so as to make the invasion or destruction thereof a legal wrong.

The cause of action asserted by plaintiff in the amendments to his petition stricken by trial court in this case is unknown to the common law, and has no direct statutory sanction.

Plaintiff suggests in his brief and argument that the issue before us is simply whether this court will now face up to its responsibility of providing redress to the injured minor plaintiff and allow and permit his recovery, or whether this court will hide behind the hollow and archaic notion that just because recoveries have not been permitted in the past they shall not be permitted in the future.

We do not believe the question can be so cavalierly treated. While this problem has not been before us heretofore, it has received the attention of courts of other jurisdictions, and by legal writers.

In Prosser, Law of Torts (4th Ed.) at page 896, we find:

"The interest of the child in proper parental care, which has received only scanty recognition in cases of intentional interference, has run into a stone wall where there is merely negligent injury to the parent. The liability has been rejected even in the District of Columbia (Hill v. Sibley Memorial Hospital, D.D. C.1952, 108 F.Supp. 729 [739]; Pleasant v. Washington Sand & Gravel Co., 1958, 104 U.S.App.D.C. 374, 262 F.2d 471) which began the recognition of the wife's cause of action; and there has been the same refusal to consider it in half a dozen other jurisdictions. (Jeune v. Del E. Webb Const. Co., 1954, 77 Ariz. 226, 269 P.2d 723; Turner v. Atlantic Coast Line R. Co., N.D.Ga.1958, 159 F.Supp. 590; Hoffman v. Dautel, 1961, 189 Kan. 165, 368 P.2d 57; Erhardt v. Havens, Inc., 1958, 53 Wash.2d 103, 330 P.2d 1010; Hayrynen v. White Pine Copper Co., 1968, 9 Mich.App. 452, 157 N.W.2d 502.) The sole flicker of recognition came from a lower federal court in Hawaii (Scruggs v. Meredith, D.Hawaii 1955, 134 F.Supp. 868), guessing at Hawaiian law; but after the supreme court of Hawaii (Halberg v. Young, 1957, 41 Hawaii 634, 59 A.L.R.2d 445), itself had held to the contrary, the federal decision had to be reversed on appeal (Meredith v. Scruggs, 9 Cir. 1957, 244 F.2d 604).

"It is not easy to understand and appreciate this reluctance to compensate the child who has been deprived of the care, companionship and education of his mother, or for that matter his father, through the defendant's negligence. This is surely a genuine injury, and a serious one, which has received a great deal more sympathy from the legal writers than from the judges. (See Notes, 1953, 6 Vand.L.Rev. 926; 1953, 2 St. Louis L.Rev. 305; 1962, 11 Kan.L.Rev. 186; 1956, 54 Mich.L.Rev. 1023; 1956, 42 Corn.L.Q. 115; 1956, 8 S.C.L.Q. 477.) There is of course the same problem of preventing double compensation as in the case of the wife's action, since the child will to some extent benefit by any sum recovered by the injured parent; but it is quite evident that this will not and

cannot recompense him for all that he has lost. The obstacles in the way of satisfactory limitation of recovery are no greater than in the case of the wife. As has been said even by one court (Hill v. Sibley Memorial Hospital, D.D.C.1952, 108 F.Supp. 739) which considered itself forced to deny recovery, it is difficult 'on the basis of natural justice to reach the conclusion that this type of action will not lie.' It is particularly difficult when recovery is permitted to the wife, but denied to the child."

(Citations of authority parenthetically supplied).

Some courts have recognized the right of a child to maintain an action for an intentional tort in a case where one parent has been enticed away by another and the affections of said parent alienated. We would find ourselves hard put to differentiate between a case bottomed upon such a factual situation and a case such as the one before us here where redress is sought for an unintentional or negligent tort. Plaintiff places some reliance on the case of Daily v. Parker, 152 F.2d 174 (7th Cir. 1945), and quotes from said case as follows:

"Our conclusion, without going further into the matter, is that a child today has a right enforceable in a court of law, against one who has invaded and taken from said child the support and maintenance of its father, as well as damages, for the destruction of other rights which arise out of the family relationship and which have been destroyed or defeated by a wrong doing third party."

In Law of Torts, *supra*, at page 886, with respect to said proposition, Dean Prosser said:

"The older common law gave the child no right to the 'services' of a parent, as distinguished from his support. There were no cases dealing with any liability for alienation of the parent's affections. It is only within recent years that the

question has even been raised. (Coulter v. Coulter, 1923, 73 Colo. 144, 214 P. 400; Cole v. Cole, 1931, 277 Mass. 50, 177 N.E. 810; Morrow v. Yannantuono, 1934, 152 Misc. 134, 273 N.Y.S. 912, all denying liability.) Since 1923 some eleven courts have held that the child's action will not lie. (Kane v. Quigley, 1964, 1 Ohio St.[2d] 1, 203 N.E.2d 338; Whitcomb v. Huffington, 1956, 180 Kan. 340, 304 P.2d 465; Lucas v. Bishop, 1955, 224 Ark. 353, 273 S.W.2d 397; Scholberg v. Itnyre, 1953, 264 Wis. 211, 58 N.W.2d 698; Edler v. MacAlpine-Downie, 1950, 86 U.S.App.D.C. 97, 180 F.2d 385; see Notes, 1965, 34 U.Cin.L. Rev. 545; 1965, 22 Wash. & Lee L.Rev. 247.) No better reasons have been given than the lack of any right to services, the absence of precedent, and the conclusion that any change must be for the legislature. At the time of writing the courts of four jurisdictions have recognized a cause of action in the child analogous to that of the wife for alienation of affections. It has been contended, with obvious reason, that the interest of the child in an undisturbed family life is at least of equal importance with that of either parent, and is entitled to equal consideration and redress; (See Nocca, Should a Child Have a Right of Action Against a Third Person Who Has Enticed One of His Parents Away from the Home, 1956, 2 N.Y.Law Forum 357; Notes, 1951, 39 Cal.L.Rev. 294; 1952, 32 Bos.U.L.Rev. 82; 1953, 6 Vand.L.Rev. 926; 1953, 6 Okl.L.Rev. 500; 1953, 2 St. Louis U.L.J. 305; 1954, 14 La.L.Rev. 713; 1954, 37 Marq.L.Rev. 271; 1956, 8 S.C. L.Q. 477; 1956, 42 Corn.L.Q. 115; 1957, 6 Kan.L.Rev. 95) and the prediction may be ventured that the legal remedy will gain ground in the future, and that the protection of the interests of children will not be left entirely to other agencies of social control."

The distinction between such cases (*i. e.*, intentional torts *vis-a-vis* unintentional or negligent torts) is pointed out in Halberg v. Young, *supra*, 59 A.L.R.2d at pages

451–452, in quoting from Miller v. Monsen, 228 Minn. 400, 37 N.W.2d 543:

"It is contended also that a child is not entitled to recover for injuries to its parent, citing Eschenbach v. Benjamin, 195 Minn. 378, 263 N.W. 154. The argument is without merit, for the obvious reason that a child's cause of action for enticement of its parent is based upon a direct wrong to the child, for which recovery is sought against the enticer, see Pickle v. Page, 252 N.Y. 474, 169 N.E. 650, 72 A. L.R. 842; Green, Relational Interests, 29 Ill.L.Rev. 460, 479; whereas an action by a child to recover for injuries to its parent is based upon a direct injury to the parent and an indirect one to the child. As we held in the Eschenbach case, *the law does not recognize a cause of action in a child for indirect injuries sustained as a result of a direct injury to its parent.* The child's rights are to be determined by whether its rights have been violated and not whether its parents' have been." (emphasis added.)

The argument of plaintiff seems to be directed to the proposition that there is no statutory prohibition against the type of action asserted in the amendments to petition stricken by trial court on motion. While we are not inclined to agree unequivocally with such a statement as will be observed in the succeeding division of this opinion, we are inclined to follow the lead of courts of other jurisdictions in concluding we should await direct legislative action permitting the maintenance of suits for recovery such as that sought in the amendments to plaintiff's petition. The Court of Appeals of Michigan, in Hayrynen v. White Pine Copper Co., 9 Mich. App. 452, 157 N.W.2d 502, at page 503, said:

"Turning first to the question of the possibility of recovery for loss of companionship and injury by the children of an injured parent, we are forced to conclude with appellants that 'there is little statutory or prior judicial authority at the present time with respect to the protection and enforcement of this right.'

"The sole case that appellant cites, with even an oblique application to this case, appears in the decision of the Federal District Court for the Western District of Michigan, Russick v. Hicks (D.C.1949), 85 F.Supp. 281. This case furnishes us little precedent and scant comfort to the plaintiffs since it does not deal with an automobile negligence case. Indeed, it involves an action against a third party for enticing a parent from the family home. The gulf between the 2 types of action will not be bridged by this Court just as it has not been bridged by any court in the past.

" 'It is apparent that one suffering physical injury not resulting in death may, as a result, be unable to give his minor children parental attention, training, affection, support, etc., in the same degree as he might have done but for the injury. This annotation seeks to determine whether the courts have recognized an independent right of action in the children to recover against the tortfeasor for such loss. The question posed may be answered briefly and in the negative. Any trend in other fields toward liberality in extending the right to recover for injury to "consortium" has not been apparent in the situation here discussed, so that it appears to be the universally accepted rule at the present time that no such right of action exists.' 59 A.L.R.2d 454.

"A further definitive statement on this subject appears in 61 Columbia Law Review, p. 1347, in the following words:

" 'The child, in contrast to the other members of the immediate family, has received little or no judicial protection of his familial interests. There appears to have been no instance at common law of a suit by a child for injury to or interference with his relationship with his parents, perhaps because a child clearly had no right to the serv-

ices of a parent. Even today, suits by a child to recover for the loss of love and companionship of a parent caused by negligent injury are universally dismissed by the court.'

"Likewise, the case of Montgomery v. Stephan (1960), 359 Mich. 33, 101 N.W. 2d 227, while containing a scholarly and absorbing dissertation on the term 'consortium' and all it implies, appears to us to offer little support to the claim of plaintiff that children have a derivative, or even comparable, cause of action.

"Accordingly, we hold that the trial court acted properly in granting the summary judgment on this particular ground."

And, in General Electric Co. v. Bush (Nev.1972), 498 P.2d 366, 371, in an action brought by the wife of a rigger on her own behalf and as guardian ad litem of her children against the manufacturer of a vehicle used in open pit mining which broke and injured the husband and father of plaintiffs, the Supreme Court of Nevada said, in reversing an award to the children:

"Are the children of a father injured by the negligent acts of third persons entitled to maintain independent actions to recover damages for their loss of consortium with their father the same as their mother?

"The trial court instructed the jury that the children had a cause of action for their individual losses occasioned by their father's injuries. The jury awarded the three minor children the sum of $150,000.

"Only one court has recognized their cause of action. Scruggs v. Meredith, 134 F.Supp. 868 (D.C.Haw.1955) (reversed on appeal by authority of Halberg v. Young, 41 Haw. 634, 59 A.L.R.2d 445 (1957)). Substantial differences exist in the consideration of the childrens' claim as against that of their mother, all of which have compelled the overwhelming weight of authorities to be against

an action for the children. Halberg v. Young, supra; Annot. 59 A.L.R.2d 454 (1958); Hayrynen v. White Pine Copper Co., 9 Mich.App. 452, 157 N.W.2d 502 (1968). We are satisfied to await legislative action, if any, on this issue."

We find ourselves in like position; we shall be content to await the action of our legislature in this area.

II. Further, we find ourselves inhibited from declaring that minor plaintiff has a maintainable cause of action by the provisions of section 613.15, The Code, 1971:

"Injury or death of spouse—measure of recovery. In any action for damages because of the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man. In addition she, or her administrator for her estate, may. recover for physician's services, nursing and hospital expense, and in the case of both women and men, such person, or the appropriate administrator, may recover the value of services and support as spouse or parent, or both, as the case may be, in such sum as the jury deems proper; *provided, however, recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same.*" (Italics supplied)

Plaintiff reminds us that in Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 664–665 (Iowa 1969), this court said:

"Section 613.15 permits recovery for the value of services decedents might and would have rendered in training and educating their children. * * *

"The Schmitt children had a right to look forward to care, advice and counsel from Dorothy (mother) for the remaining 33.97 years of normal life expectancy and from Theodore (father) for 28.67

years. Even adult and married children have the right to expect the benefit of good parental advice and guidance."

The section above set out, section 613.15, The Code, clearly permits recovery for all of the elements of damages asserted by plaintiff in the matter before us. It limits procedurally only the manner in which and the proper party by whom, the cause of action may be maintained, irrespective of plaintiff's assertion that the final phrase of section 613.15, which is italicized above, is not applicable here since the injury for which the parent is allowed recovery is "not the same injury that the child has suffered".

We incline more to the belief that the factual situation before us here is exactly that envisioned by the legislature in the enactment and passage of section 613.15.

We conclude, therefore, the trial court was correct in its ruling sustaining motions of defendants to strike the amendments to the petition of the plaintiff. This cause is therefore affirmed.

Affirmed.

MOORE, C. J., and LeGRAND, UHLENHOPP and HARRIS, JJ., concur.

RAWLINGS, J., concurs in Division II and the result.

MASON, REYNOLDSON and Mc-CORMICK, JJ., dissent.

MASON, Justice (dissenting).

I dissent.

In the present case the minor plaintiff pleads a right to recover on the theory he has been deprived, and would continue to be deprived in the future, of the family relationship, loss of companionship and association, the care, attention, kindness, maternal guidance, comfort and solace of his mother's society as a result of nonfatal injuries sustained by her as a proximate result of defendants' negligence.

As a result of the court's ruling on defendants' motion to strike, this appeal presents the question whether one whose negligence proximately causes physical injuries not resulting in death of a parent of a minor child is liable to such child for damages for his deprivation of the "aid, comfort, companionship, loss of services and earnings" of the parent attributable to the injury. Stated otherwise, does an independent right of action exist in the child to recover against the tortfeasor for such loss?

The majority denies the minor the right to bring an action for such injuries suffered by him in this respect. They do so in light of what appears to be the universally accepted rule at the present time that no right of action exists in a child to recover for the loss of love, companionship, guidance and support of a parent caused by the negligence of a third party. See Hayrynen v. White Pine Copper Co., 9 Mich.App. 452, 157 N.W.2d 502, 503, cited by the majority.

As stated by the majority, the cause of action asserted by the minor plaintiff has no direct statutory sanction and there is no decision of any appellate court which has recognized that an independent right of action exists under the common law in a child to recover against the tortfeasor for such loss.

The majority says, "No one questions the fact a child has an interest in the maintenance of a viable family relationship and in all the benefits derived from the family circle."

For me it is not easy to understand and appreciate this reluctance to compensate the child who has been deprived of the care, companionship and education of a parent who has been injured through the

defendant's negligence in a nonfatal accident. See Prosser on Torts, Fourth Ed., page 896.

No better reason has been given than the lack of any right to services, the absence of precedent and the conclusion that any change must be for the legislature.

The elements of a cause of action for negligence are set forth in Restatement, Second, Torts, section 281, in this fashion:

"Statement of the Elements of a Cause of Action for Negligence. The actor is liable for an invasion of an interest of another, if:

"(a) the interest invaded is protected against unintentional invasion, and

"(b) the conduct of the actor is negligent with respect to the other, or a class of persons within which he is included, and

"(c) the actor's conduct is a legal cause of the invasion, and

"(d) the other has not so conducted himself as to disable himself from bringing an action for such invasion."

The essential question is whether a minor's interest in the support, care, training, guidance, comfort and solace of a mother is such an interest as to be legally protectible against defendants' negligent conduct. It will be recalled that the minor's alleged cause of action is based on the theory he has sustained a separate loss or damage as a consequence of the nonfatal injury to his mother. It is premised upon an invasion of a right. He contends that as a result of defendants' negligence causing physical injury to his mother not resulting in death he has been deprived of the "aid, comfort, companionship, loss of services and earnings" previously available to him.

It is apparent that one who suffers physical injury resulting in a disability less than death may, as a result, be unable to give her minor child parental attention, training, affection and support in the same degree as she might have done but for the injury.

Miller v. Monsen, 228 Minn. 400, 37 N. W.2d 543, quoted from by the majority was an action by a minor child to recover damages alleged to have been sustained as a result of defendant's enticing her mother from their family home. The opinion contains this language which I deem relevant to a determination of whether a child has a legally protected interest in the attention, training, affection, and support of a parent free from physical disability brought about by negligence of a third party:

"* * * There can be no doubt that benefits of the greatest value flow to the child from its mother's love, society, care, and services, which may, be a major factor in the welfare of the child during its entire life, and that, because the child's character, disposition, and abilities have a corresponding impact upon society, it is of the highest importance to the child and society that its right to receive the benefits derived from its mother be protected. Such a right has pecuniary value capable of measurement." Id., 228 Minn. at 403, 37 N.W.2d at 545.

Before making the statement just quoted the court made several similar statements bearing on the importance of keeping the family relationship intact which support my contention a child has a legally protected interest in the care, companionship and education of its parent even though such statements were made by the court in the cited case in pointing out the distinction between intentional torts and unintentional or negligent torts.

"* * * [T]he common law is not static, * * * it consists of fundamental principles and reasons and a system of legal logic rather than a fixed and inflexible set of rules, and 'by its own principles adapts itself to varying conditions, and the court at all times in the application of any

rule should give heed to present-day standards of wisdom and justice.'" Halberg v. Young, 41 Haw. 634, 642, 59 A.L.R.2d 445, 451.

The common law should continue to be reappraised and reinterpreted to meet changing circumstances.

In regard to the rules of the common law and the novelty of actions of this kind the Minnesota court said:

"Novelty of an asserted right and lack of common-law precedent therefor are no reasons for denying its existence. The common law does not consist of absolute, fixed, and inflexible rules, but rather of broad and comprehensive principles based on justice, reason, and common sense. It is of judicial origin and promulgation. Its principles have been determined by the social needs of the community and have changed with changes in such needs. These principles are susceptible of adaptation to new conditions, interests, relations, and usages as the progress of society may require. * * * [citing authorities] It is but lip service to these principles to say that the common law has such capacity for growth and expansion and then to refuse to allow it effect in a particular case where that should be done. * * * [citing authorities].

" 'To concede this capacity for growth and change in the common law by drawing "its inspiration from every fountain of justice," and at the same time to say that the courts of this country are forever bound to perpetuate such of its rules as, by every reasonable test, are found to be neither wise nor just, because we have once adopted them as suited to our situation and institutions at a particular time, is to deny to the common law in the place of its adoption a "flexibility and capacity for growth and adaptation" which was "the peculiar boast and excellence" of the system in the place of its origin.'" Miller v. Monsen, 228 Minn. at 406, 37 N.W.2d at 547.

Unless the foregoing pronouncement, as well as the statement quoted earlier from Halberg v. Young, is to be completely ignored this court should recognize that a minor has a legally protectible interest in the nurture and training—physical, intellectual and moral—rendered by a parent free from physical disability brought about by negligence of a third party and thus hold a cause of action exists in a minor to recover against such third party for an unintentional invasion of this interest which results in the minor's loss.

Although factually distinguishable in that the court was dealing with a wife's action for loss of consortium allegedly due to defendant's negligent injury of her husband, the following principle stated in Acuff v. Schmit, 248 Iowa 272, 280, 78 N.W. 2d 480, 485, is pertinent to my position in the case before us:

"While we recognize the almost total lack of precedent for allowing appellant's cause of action, we deem precedent to be worthy of support only when it can stand the scrutiny of logic and sound reasoning in the light of present-day standards and ideals."

In connection with the *Acuff* case it is interesting to note that the decision there was contrary to the rule announced in Restatement, Torts, section 695. The Council to the Members of The American Law Institute in tentative draft No. 14, Restatement of the Law, Second, Torts, proposes to adopt section 695 without change observing that "this is highly controversial." The question is now before the Institute for decision. In the same tentative draft the Council proposes the following as section 707A:

"Action by child for harm caused by tort against parent. One who by reason of his tortious conduct is liable to a parent is not liable to a minor child for resulting loss of parental support and care."

In reference to section 707A the Council noted for the Institute that, "This is stated with some reluctance on the part of several of the drafting group, and under compulsion of the case law." Adoption of this section is also before the Institute for decision.

Everyone seems to agree that "a child has an interest in the maintenance of a viable family relationship and in all the benefits derived from the family circle" but no one does anything about it.

The present case is not the factual situation before the court in Egan v. Naylor, 208 N.W.2d 915 (Iowa 1973). The *Egan* case came before this court on an interlocutory appeal from an order dismissing division II of plaintiff's petition. That division was based on the claim of the decedent's children for loss of support occasioned by the alleged negligent injury of their father which resulted in his death. Since Iowa does not recognize a common-law action for death, the action was instituted under our survival statute, section 611.20, The Code. In *Egan* this court held that section 613.15, The Code, did not create a right of action in children to sue for loss of support for the wrongful death of a parent. As repeatedly pointed out, death did not ensue in the case under consideration.

I adhere to the principles announced in *Egan* because it was an action arising by reason of the wrongful death of the parent.

I disagree with the majority who find themselves "inhibited from declaring that minor plaintiff has a maintainable cause of action by the provisions of section 613.15, The Code, 1971," and with the conclusion that this statute permits recovery for all elements of damages asserted by the minor plaintiff in the matter before us.

I would hold the minor alleged a cause of action in his petition as amended and the trial court erred in sustaining defendants' motion to strike notwithstanding the considerations weighing against the recognition of such an action as summarized in the note in 54 Mich.L.Rev. 1023. See Annot. 59 A.L.R.2d 454, n. 1.

REYNOLDSON and McCORMICK, JJ., join this dissent.