BERGER v WEBER

Docket No. 27377. Submitted January 12, 1977, at Lansing.—Decided
April 3, 1978. Leave to appeal applied for.

Christine Berger and Wayne Berger brought an action against
Albert Weber, Becker Leasing Co., Inc., and Star of the West
Milling Company seeking damages for injuries sustained by
Christine Berger and for loss of her consortium which resulted
when her automobile was struck from the rear by a truck
owned and operated by the defendants. Wayne Berger also
sought damages from the defendants as next friend of his
mentally retarded daughter Denise Berger for the loss of her
mother's society, companionship, love and affection as a result
of the injuries. Defendants conceded the issue of liability as to
Wayne and Christine Berger individually but sought a trial on
the amount of damages. Defendants moved for summary judg-
ment on the issue of liability to Denise Berger. The Ingham
County Circuit Court, Thomas L. Brown, J., granted the motion
for summary judgment as to Denise Berger's claims finding
that no cause of action existed in Michigan for a minor child's
loss of a parent's society and companionship. A jury returned a
verdict for plaintiffs Wayne and Christine Berger in the
amount of $142,000. Defendants moved for a new trial. Motion
denied. Defendants appeal contending the instructions to the
jury were erroneous and prejudicial to their case. Plaintiff
Wayne Berger cross-appeals on behalf of Denise Berger. *Held:*

In this case and in all future cases, a child may maintain an
independent cause of action for loss of the society and compan-
ionship of a parent or one who has assumed a parental role,
but the child may not recover for lost support because such
financial losses are recoverable by the injured parent.

Affirmed in part, reversed in part, and remanded.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 3, 4] 59 Am Jur 2d, Parent and Child §§ 106 *et seq.,* 111.

Child's right of action, for loss of support, training, parental atten-
tion and the like, against third person negligently injuring par-
ent. 59 ALR2d 454 s., 69 ALR3d 528.

[2] 59 Am Jur 2d, Parent and Child § 8 *et seq.*

1. ACTION—PARTIES—PARENT AND CHILD—LOSS OF SOCIETY—LOSS OF COMPANIONSHIP—LOSS OF SUPPORT—PARENTS—PARENTAL ROLE.

A child may maintain an independent cause of action for loss of parental society and companionship when a parent is severely injured; the child does not have an independent action for support, at least in the economic sense, because the injured parent may recover for financial losses resulting from his or her disability; the term parent includes not only natural parents but those who have assumed a parental role to a child; this rule applies only to the instant case and all future cases.

2. PARTIES—CHILDREN—RIGHTS.

Children are persons with many of the same rights as adults including constitutional protection for freedom of speech, equal protection against racial discrimination, due process in civil contexts, and a variety of rights in the criminal procedure context.

3. PARTIES—CHILDREN—LEGAL INTERESTS—PARENTAL SOCIETY—PARENTAL COMPANIONSHIP.

Children have a legal interest in the society and companionship of their parents which is deserving of protection when a parent is injured to the extent that he or she cannot provide the child with parental love, guidance and affection.

4. DAMAGES—DETERMINATION—DIFFICULTIES—PARENT AND CHILD—LOSS OF SOCIETY—LOSS OF COMPANIONSHIP—LIABILITY.

Difficulty in determining damages should not bar a child from recovering for the loss of society and companionship resulting from an injury to the child's parent, once liability for such injury is established.

*Church, Wyble, Kritselis & Tesseris* (by *Thomas H. Hay*), for plaintiffs.

*Davidson, Gotshall, Kohl, Nelson, Secrest, Wardle & Lynch,* for Star of the West Milling Company.

*Willingham, Coté, Hanslovsky, Griffith & Foresman, P. C.,* for Weber and Becker Leasing Co., Inc.

Before: D. E. HOLBROOK, JR., P. J., and V. J. BRENNAN and BRONSON, JJ.

D. E. HOLBROOK, JR., P. J. This action arose out of a March 13, 1973, rear-end collision involving plaintiff Christine Berger and defendant Albert Weber. Plaintiffs Wayne and Christine Berger filed a complaint on their own behalf and sought damages for medical expenditures, loss of income and loss of consortium. As next friend, Wayne Berger sought damages for his mentally retarded daughter's loss of society, companionship, love and affection of her mother, Christine Berger, as a result of the injuries sustained by Mrs. Berger. It was further alleged that the mentally retarded child was dependent upon her mother to administer to her peculiar physical and psychological needs and because Mrs. Berger had allegedly sustained both physical and psychological injuries in the accident, she could no longer continue to administer to the peculiar needs of her retarded daughter.

Defendants conceded the issue of liability as to Wayne and Christine Berger and sought a trial on the amount of damages. A jury awarded Wayne and Christine Berger $142,000 and defendants appeal. We find defendants' allegation of error in the jury instructions to be so lacking in merit as to render discussion unnecessary and we affirm.

Plaintiff Wayne Berger, as next friend, cross-appeals the trial court's pre-trial grant of defendants' motion for summary judgment as to the issue of liability for the minor daughter's loss of society and companionship. The trial court ruled there was no cause of action in Michigan for a minor child's loss of a parent's society and companionship.

We reverse and hold that a child may maintain a cause of action for loss of parental society and companionship when a parent is "severely" injured. Because the injured parent may recover for

financial losses resulting from his or her disability, we reject the contention that the child has an independent action for "support", at least in the economic sense. To allow a parent to recover lost wages, for example, and to also allow a child to recover for loss of support would result in double recovery. We therefore confine our holding to a child's independent action for loss of society and companionship.

We have carefully weighed the competing arguments and find the balance tips in favor of creating this cause of action. In Michigan there are several old cases with dictum to the effect that a child does not have an independent cause of action for injuries to a parent and a 1968 Court of Appeals case which, noting the lack of precedent, concluded a child did not state a cause of action. In *Blair v Seitner Dry Goods Co,* 184 Mich 304; 151 NW 724 (1915), *overruled on other grounds, Montgomery v Stephan,* 359 Mich 33; 101 NW2d 227 (1960), the Court found that minor children may suffer on account of an injury to a parent but that "it has never been considered that they had an action therefor". 184 Mich at 313. Similarly, *Hayrynen v White Pine Copper Co,* 9 Mich App 452; 157 NW2d 502 (1968), grounded its objection to a child's recovery on the lack of " 'statutory or prior judicial authority at the present time' ". 9 Mich App at 456. In deciding which statute of limitations was applicable in a wrongful death action, the Michigan Supreme Court indicated, without analysis, that a minor had no right of action for injuries to his parent. *Cugell v Sani-Wash Laundry Co,* 280 Mich 286, 289; 273 NW 571 (1937).

In light of recent statutory and judicial developments we believe that the time has come for

recognition of a child's genuine loss when he or she is deprived of parental society and companionship. Until the 1960 case of *Montgomery v Stephan, supra,* a husband could recover for the loss of a wife's consortium but the wife could not recover for the same loss when her husband was injured. Citing the long history of legal discrimination against married women, Justice TALBOT SMITH found that the conditions of modern society justified an overdue change in the judicially created bar to a wife's action for loss of consortium. As Justice SMITH concluded, "[t]he reasons for the old rule no longer obtaining, the rule falls with it". 359 Mich at 49. We believe the spirit of *Montgomery* is analogous to the case at bar and that neither the lack of precedent cited in *Hayrynen* nor the varying objections from courts in other jurisdictions[1] are sufficient to uphold archaic barriers which prevent a child from being compensated for his or her unquestionable loss.

## Emerging Rights of Children

Our ruling is in keeping with the modern judicial recognition of a child as a person with many of the same rights as adults. Once relegated to the status of chattel,[2] children have lagged behind other groups of society in being accorded basic rights of citizenry.

In a recent pronouncement by the United States Supreme Court allowing minors to obtain contraceptives without parental consent, *Carey v Population Services International,* 431 US 678, 692; 97 S Ct

---

[1] As of this writing 19 jurisdictions, including the District of Columbia, have rejected children's various claims for loss of support and/or consortium and/or services and/or society and companionship. *Borer v American Airlines Inc,* 19 Cal 3d 441, 449; 138 Cal Rptr 302, 308; 563 P2d 858, 864 (1977). *See also, Anno.* 69 ALR3d 528.

[2] *See, Montgomery v Stephan, supra,* at 39.

2010, 2020; 52 L Ed 2d 675, 689 (1977), the Court noted:

"'Minors, as well as adults, are protected by the Constitution and possess constitutional rights.' *Planned Parenthood of Central Missouri v Danforth,* [428 US 52, 74; 96 S Ct 2831, 2843; 49 L Ed 2d 788, 808 (1976)]. '[W]hatever may be their precise impact, neither the Fourteenth Amendment nor the Bill of Rights is for adults alone.' *In re Gault,* [387 US 1, 13; 87 S Ct 1428, 1436; 18 L Ed 2d 527, 538 (1976)]."

The Court identified some of those rights: constitutional protection for freedom of speech,[3] equal protection against racial discrimination,[4] due process in civil contexts,[5] and a variety of rights in the criminal procedure context.[6] 431 US at 692; 97 Sup Ct at 2020; 52 L Ed 2d at 689.

In the context of a complex child custody case, *In re Maria S Weldon,* 397 Mich 225, 276; 244 NW2d 827 (1976), Justice COLEMAN commented,

"We recognize two protected rights * * * that of the child as a separate and distinct entity to those unalienable rights of American citizenship."

Earlier in her opinion Justice COLEMAN stated:

"We find the Child Custody Act [MCLA 722.21 *et seq.;*

---

[3] *Tinker v Des Moines School District,* 393 US 503; 89 S Ct 733; 21 L Ed 2d 731 (1969).

[4] *Brown v Board of Education of Topeka,* 347 US 483; 74 S Ct 686; 98 L Ed 873 (1954).

[5] *Goss v Lopez,* 419 US 565; 95 S Ct 729; 42 L Ed 2d 725 (1975).

[6] *In re Winship,* 397 US 358; 90 S Ct 1068; 25 L Ed 2d 368 (1970) (proof beyond a reasonable doubt), *Breed v Jones,* 421 US 519; 95 S Ct 1779; 44 L Ed 2d 346 (1975) (prohibition of double jeopardy), *In re Gault,* 387 US 1; 87 S Ct 1428; 18 L Ed 2d 527 (1967) (rights to notice, counsel, confrontation, cross-examination and not incriminate oneself), and *Gallegos v Colorado,* 370 US 49; 82 S Ct 1209; 8 L Ed 2d 325 (1962) (protection against coerced confessions).

MSA 25.312(1) *et seq.]* to be consistent with contemporary recognition of the inherent rights of children as citizens". *In re Weldon,* 397 Mich at 268.

In determining child custody, the legislative standard is the "best interests of the child". A minor child has a right to legal representation in a child custody proceeding, MCLA 552.45; MSA 25.121.

The recent abolition of intra-family tort immunity carries with it the implication that a child has an independent identity. *Plumley v Klein,* 388 Mich 1; 199 NW2d 169 (1972). Also a child may sue a tortfeasor for negligently inflicted pre-natal injuries, the Court stating that a child has a right to begin life with a sound mind and body. *Womack v Buchhorn,* 384 Mich 718, 725; 187 NW2d 218 (1971).

In short, these cases reflect a growing awareness by the judiciary that children are persons with a variety of legal interests. Today we conclude that one of these interests, parental society and companionship, is deserving of protection when a parent is injured to the extent that he or she cannot provide the child with parental love, guidance and affection.

## Nature of Child's Loss

Currently Michigan law allows a spouse to recover for loss of "consortium" when the other spouse is severely injured, *Montgomery v Stephan, supra.* In 1971 the wrongful death act was amended to specifically allow recovery for the *"loss of society and companionship of the deceased"*.[7] Even before the statutory amendment, children could recover for such losses in a wrongful death action. *Westfall v Venton,* 1 Mich App 612; 137

[7] MCLA 600.2922; MSA 27A.2922, amended by 1971 PA 65.

NW2d 757 (1965), *lv den,* 377 Mich 700 (1966). Parents may recover for such losses when their children are killed.[8] So we are confronted with the anomalous situation of saying that a child suffers the compensable loss of society and companionship when a parent is killed but not when the parent is injured so severely that he or she cannot perform the parental function. We say that when a spouse has been severely injured the other spouse may recover for the loss of society, companionship and/ or consortium, but that the child may not recover for almost identical losses.

After noting courts have not allowed recovery, Prosser states,

"It is not easy to understand and appreciate this reluctance to compensate the child who has been deprived of the care, companionship and education of his mother, or for that matter his father, through the defendant's negligence. This is surely a genuine injury, and a serious one".[9]

Even in denying recovery, courts have recognized the child suffers a true loss. Recently the California Supreme Court admitted:

" * * * we do not doubt the reality or the magnitude of the injury suffered by plaintiffs. We are keenly aware of the need of children for the love, affection, society and guidance of parents; any injury which diminishes the ability of a parent to meet these needs is plainly a family tragedy, harming all members of that community." *Borer v American Airlines Inc,* 19 Cal 3d 441, 453; 138 Cal Rptr 302, 310; 563 P2d 858, 866 (1977).

See also *Hill v Sibley Memorial Hospital,* 108 F

---

[8] *Currie v Fiting,* 375 Mich 440; 134 NW2d 611 (1965), *Reisig v Klusendorf,* 375 Mich 519; 134 NW2d 634 (1965).

[9] Prosser, Law of Torts (4th ed), § 125, p 896.

Supp 739 (DDC 1952), *Hankins v Derby,* 211 NW2d 581, 582 (Iowa, 1973). The loss of parental guidance and training can have a severe impact on the child's development and personality.[10] The importance of the "family unit" has been noted in several Michigan cases.[11] As the dissenters on the Iowa Supreme Court lament,

"Everyone seems to agree that 'a child has an interest in the maintenance of a viable family relationship and in all the benefits derived from the family circle' but no one does anything about it." *Hankins v Derby, supra,* at 589 (dissent of Mason, Reynoldson and McCormick, JJ.).

### *Reasons for Denying a Cause of Action Are Not Persuasive*

We agree with Justice Mosk in his dissent in *Borer v American Airlines, supra,* that in light of the strong policy reasons for granting recovery, the reasons advanced by the majority in *Borer* are unpersuasive and have been rejected in other contexts.[12]

In Michigan and other jurisdictions courts have cited a lack of precedent for such an action. *Hayrynen v White Pine Copper Co, supra, Borer v*

[10] Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent.* 56 B U L Rev 722, 740–741 (1976), citing P. Mussen, J. Conger & J. Kagan, *Child Development and Personality,* 163–164, 397–398 (3d ed, 1969), and McCord, McCord & Thurber, *Some Effects of Parental Absence on Children,* 64 J Abnormal Soc Psych, 361 (1962). *See also* the testimony of Dr. Trocchio relating to the psychological effects of deprivation of a parental figure in Justice COLEMAN's opinion *In re Maria S Weldon,* 397 Mich 225, 279–280; 244 NW2d 827 (1976).

[11] *Westfall, supra* at 620, Justice COLEMAN's opinion in *Weldon, supra* at 275–276 (child custody context), and the dissenting opinion of Justice ADAMS in *Heider v Michigan Sugar Co,* 375 Mich 490, 516; 134 NW2d 637 (1965).

[12] Dissent of Justice Mosk, *Borer, supra,* n 1, 19 Cal 3d at 453–460; 138 Cal Rptr at 310–315; 563 P2d at 866–871.

*American Airlines, supra.* This argument misperceives the evolving nature of the common law. Carried to its logical extreme, this doctrine would result in a static body of law. In acknowledging the wife's right to recover for loss of consortium, Justice SMITH reasoned:

"Were we to rule upon precedent alone, were stability the only reason for our being, we would have no trouble with this case. We would simply tell the woman to begone, and to take her shattered husband with her, that we need no longer be affronted by a sight so repulsive. In so doing we would have vast support from the dusty books. But dust [from] the decision would remain in our mouths through the years ahead, a reproach to law and conscience alike. Our oath is to do justice, not to perpetuate error." *Montgomery v Stephan, supra,* at 37–38.

We concur with Justice Mosk's response to the lack of precedent argument—when the crowd is marching in the wrong direction, it is time to break ranks and strike out on our own.[13]

A second argument advanced by some courts is the uncertainty of damages and/or the inability of money damages to compensate for such an intangible loss.[14] While it is true that calculating damages for loss of society and companionship may be difficult, it would seem no more difficult than the task of determining a spouse's identical loss or the almost identical loss of a child in a wrongful death action when a parent is killed. Probably in the vast majority of cases involving parental injury, the injury will not be so severe that the child

---

[13] *Id.* 19 Cal 3d at 458; 138 Cal Rptr at 313; 563 P2d at 869.

[14] *Russell v Salem Transportation Co, Inc,* 61 NJ 502; 295 A2d 862 (1972), *Borer, supra,* n 1, 19 Cal 3d at 448; 138 Cal Rptr at 307; 563 P2d at 863, 56 B U L Rev, *supra,* at 734, 69 ALR3d 528, *supra,* n 1, at 542–543.

suffers a loss of society and companionship. But in cases, for example, where a parent is severely crippled or suffers brain damage a child will be deprived of parental guidance, love and affection. Obviously there will be a range of possible recoveries depending on the extent of the loss. Once liability is established, difficulty in determining damages will not bar recovery. *Troppi v Scarf,* 31 Mich App 240, 261; 187 NW2d 511 (1971), *Purcell v Keegan,* 359 Mich 571 576; 103 NW2d 494 (1960).

We reject the majority's argument in *Borer* that because a child's loss is intangible, money damages are inadequate.[15] This is more a comment on the inadequacy of legal remedies in general rather than a valid reason for denying recovery to a child. Money cannot purchase eyesight for one who is blinded nor can it truly compensate for intangibles such as pain and suffering or the loss of a life. To say that a child cannot be fully compensated for his or her loss does not justify ignoring the loss altogether.

A third argument made by some courts is the possibility of double recovery by the child because, either juries already compensate the child for lost economic support through an award to the parent, or juries already indirectly factor in a child's emotional loss through an award to the parent. We agree with the first of these arguments and, therefore, we have declined to allow a child an action for loss of economic support. The second argument, however, is actually a further reason for adopting an independent action for the child.

---

[15] *Borer, supra,* n 1, 19 Cal 3d at 446–448; 138 Cal Rptr at 306–307; 563 P2d at 862–863. *See,* the dissent of Justice ADAMS in *Breckon v Franklin Fuel Co,* 383 Mich 251, 287–298; 174 NW2d 836 (1970), which concluded that dependency in terms of companionship was perhaps even easier to ascertain than pain and suffering. Justice ADAMS' dissent was specifically adopted by the Court in *Smith v City of Detroit,* 388 Mich 637, 649; 202 NW2d 300 (1972).

Rather than having juries make blind calculations of the child's loss in determining an award to the parent, a child's loss could be openly argued in court and the jury could be instructed to consider the child's loss separately. The award would accrue directly to the child rather than be lumped in with that of the parent, who may or may not spend it for the child's benefit.[16] The possibility of double recovery for loss of society and companionship would be eliminated if the jury was instructed to consider the losses of the parent and child independently.

A fourth objection advanced by some courts is the familiar "floodgates argument" that once a child is allowed recovery, maiden aunts, second cousins and next-door neighbors will fill the courts with their claims of lost companionship. This makeweight argument has probably been made whenever a new cause of action was proposed. Because of the crucial role of a parent in a child's development, we specifically confine our holding to allow recovery for the loss of parental society and companionship. This would include not only natural parents but those who have assumed a parental role to a child.[17] Whether a person serves as a parent will have to be adjudicated on a case by case basis. The rights of a new class of tort plaintiffs should be forthrightly judged on their own merits, rather than engaging in gloomy speculation as to where it will all end.[18]

A fifth barrier thrown up by some is the spectre of multiple lawsuits, since children will have their

---

[16] 56 B U L Rev, *supra,* at 735–736.

[17] Non-biological parents may, and often do, serve the identical needs of a child, *see,* Justice COLEMAN's opinion in *Weldon, supra* at 276, citing Goldstein, A. Freud & Solnit, *Beyond the Best Interests of the Child* (Free Press, 1973), pp 12–14.

[18] Dissent of Justice Mosk in *Borer, supra,* n 1, 19 Cal 3d at 460; 138 Cal Rptr at 314; 563 P2d at 870.

own cause of action.[19] While we are acutely aware of bulging trial court dockets, we conclude that the interests of the child in recovering outweigh the possibility that plaintiffs will choose to bring multiple actions resulting from one tortious incident.

A sixth objection raised by some is that in view of the fact that children may not recover for intentional invasion of the family relationship, it would be anomalous to allow recovery for negligent invasion. In Michigan MCLA 600.2901; MSA 27A.2901 has abolished actions for alienation of affections. This statutory prohibition specifically prevents a minor child from recovering from one who has induced a parent away from home, *Miller v Kretschmer,* 374 Mich 459; 132 NW2d 141 (1965). First we note that the abolition of this action has not been considered inconsistent with the child's right to recover for the negligent death of a parent under the wrongful death statute nor the spouse's right to recover when the other spouse is negligently injured. Secondly, the abolition of the alienation of affections action rests on different policy grounds. As noted by one law review commentator, when a parent is enticed from the home, the value of the parental love and companionship is open to question. The action is grounded on the theory that an innocent spouse or parent has been maliciously enticed from the home by a seductive intruder. The modern scenario is more likely to disclose a disappointed spouse who is as much the pursuer as the pursued.[20] While at first glance allowing recovery for

---

[19] *See,* 69 ALR3d 528, 543–544, Love, *Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship,* 51 Ind L J 590, 603–604 (1976), Note, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal,* 13 San Diego L Rev 231, 249–250 (1975).

[20] 56 B U L Rev, *supra,* at 739.

negligent, but not intentional, interference with the family relationship might seem anomalous, on closer examination of the differing policies, we find the argument unpersuasive.

A seventh objection, argued by the California majority in *Borer,* is that a child cannot recover for loss of "consortium" because of the sexual aspect of the spousal relationship.[21] We do not choose to debate what "consortium" does or does not include. Rather than attempting to make a perfect analogy between the loss of a spouse and that of a child, we focus on the fact that the child has suffered a genuine loss of society and companionship and should be compensated.

## Summary

We have carefully scrutinized the various policy considerations and conclude that the magnitude of the child's loss outweighs the factors which would militate against allowing recovery. As one commentator points out, it is arguable that the child's need for compensation for the loss of emotional benefits flowing from family life is even greater than that of the spouse. An adult is better able to understand and adjust to such a loss than is a helpless child.[22]

In abandoning older precedents to allow parents to recover for lost society and companionship when their child was blinded and disfigured, the Wisconsin Supreme Court concluded:

"What is said with respect to parental loss in the event of death of a child is equally true in the case of injury. Our wrongful death statute already recognizes

[21] *Borer, supra,* n 1, 19 Cal 3d at 448; 138 Cal Rptr at 307, 563 P2d at 863.

[22] 56 B U L Rev, *supra,* at 742.

the loss of society and companionship as an element of damages in the case of death. It seems reasonable to recognize this same type loss where there has been injury to a minor child." *Shockley v Prier,* 66 Wis 2d 394, 400; 225 NW2d 495, 499 (1975).

Juxtaposing the terminology of "parent" and "child" would summarize our conclusion today.

The language of the older Michigan Supreme Court cases, *Blair, supra,* and *Cugell, supra,* represents dictum, and the Court of Appeals is not bound to follow it. In the interests of justice and fairness we hold the new rule to apply to the instant case and all future cases. See *Plumley v Klein, supra,* at 8.

Affirmed in part; reversed in part. Remanded for further proceedings. Costs to appellees and cross-appellants.