Argued and submitted August 27, 1980,
reversed and remanded for trial March 30,
reconsideration denied May 7,
petition for review allowed June 23, 1981 (291 Or 151)

OKSENHOLT,
*Appellant,*
*v.*
LEDERLE LABORATORIES,
*Respondent.*

(No. A7808-13974, CA 16160)

625 P2d 1357

Richard P. Noble, Portland, argued the cause and filed the briefs for appellant.

E. Richard Bodyfelt, Portland, argued the cause for respondent. With him on the brief were Peter R. Chamberlain and Bodyfelt, Mount & Stroup, Portland.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

**GILLETTE, P. J.**

In this action by the plaintiff physician against the defendant manufacturer of a prescription drug, the trial court sustained defendant's motion to strike plaintiff's complaint, without leave to plead further, on the express ground that the damages which plaintiff sought to recover were not cognizable under Oregon law under the causes of action pleaded. Plaintiff appeals from the subsequent judgment for the defendant. We reverse.

We take the facts from plaintiff's complaint. Defendant manufactures the drug Myambutol, which is used in the treatment of pulmonary tuberculosis. Literature published by defendant concerning the drug indicates that the drug will not cause a permanent loss of vision. Plaintiff relied on these representations. Beginning in August, 1973, plaintiff treated a patient, Mabel Benton, for whom he prescribed Myambutol. In December, 1973, Benton began to experience problems with her vision and, shortly thereafter, suffered a permanent loss of vision due to the drug.

On February 20, 1975, Benton filed suit against the plaintiff and others alleging that the plaintiff was negligent in his treatment of her. Plaintiff subsequently settled Mrs. Benton's claim against him for the sum of $100,000. He now brings this action against the defendant, alleging that the defendant failed to warn him of the risks associated with Myambutol.

Plaintiff frames his complaint in counts for negligence and fraudulent misrepresentation. He seeks general damages in the amount of the settlement, an additional $50,000 for damage to his professional reputation and the consequent impairment of his earning capacity, an unspecified amount of special damages due to lost income, and punitive damages in the sum of $5,000,000.

Defendant claims that the plaintiff's complaint fails to state a cause of action because it fails to allege any special injury. The only damages alleged by plaintiff, defendant argues, are those which would arise as the natural consequence of being subjected to a malpractice claim. It is defendant's contention, with which the trial court apparently agreed, that such damages are not recoverable under Oregon law. It relies particularly on the law of

malicious prosecution or wrongful initiation of a civil suit. *See O'Toole v. Franklin,* 279 Or 513, 569 P2d 561 (1977). Alternatively, defendant argues that the plaintiff is either attempting to create a new tort or to bring an action for indemnity or contribution.

## INDEMNITY/CONTRIBUTION

Turning to this last matter first, we disagree with defendant's analysis. As noted, plaintiff is attempting to state a cause of action in negligence and in fraud. He does not claim a right to indemnity or seek contribution. Whether plaintiff can recover the kind of damages he seeks must be determined by reference to the specific torts which he does allege.

## NEGLIGENCE

We next consider plaintiff's negligence claim. In this court plaintiff alleges that, pursuant to statutory authority, defendant, as a manufacturer of prescription drugs, has a duty to advise plaintiff, as a physician, of any relevant hazards, side effects, and precautions to be taken in connection with the administration of those drugs. He claims that defendant breached its duty by failing to fully inform the plaintiff and/or misinforming him about Myambutol, the drug in question, in one or more of the following particulars:

"1) In failing to advise plaintiff that the use of Myambutol could cause a condition known as optic atrophy, and hence carried the risk of permanent loss of vision;

"2) In advising the plaintiff that any loss of vision was reversible upon withdrawal of the medication, when the defendant knew, or in the exercise of reasonable care should have known, that a loss of vision could be permanent;

"3) In advising plaintiff that 'in controlled studies, the frequency and magnitude of decreases in visual accuity [sic] among patients being treated with Ethambutol Hydrochloride were not higher than patients on regimens not containing Ethambutol Hydrochloride,' when the defendant knew or in the exercise of reasonable care should have known that the referenced control studies were not comparable to the dose or duration of therapy recommended by the defendants;

"4) In advising plaintiff to look for a cause other than Myambutol to explain the patient's loss of vision and to discontinue Myambutol only if no other cause of visual loss could be found."

Plaintiff alleges that "in reliance on defendants published information, plaintiff did not cease the Myambutol immediately upon the development of visual symptoms" and, as a result, his patient suffered permanent loss of vision. Plaintiff claims that:

"As a proximate result of defendant's breach of its duty to plaintiff, and due solely to that breach, plaintiff was exposed to a claim for damages for Mabel Benton's loss of vision, incurred the loss of $100,000 in settlement of Mabel Benton's disputed claim, his professional competency was questioned, and he suffered damage to his professional reputation in the community in which he practices, and consequent impairment of earning capacity, all to his general damage in the amount of $150,000, and plaintiff has lost income to the date of the trial in the amount of $_____ special damages."

## 1. Duty

In order to state a cause of action in negligence, plaintiff must allege that the defendant owed him a duty, that the defendant breached this duty, and that the breach was the cause, in fact, of some legally cognizable damage to plaintiff. *Brennen v. City of Eugene,* 285 Or 401, 405, 591 P2d 719 (1978). Whether a duty exists in any given case is a question of law. *Yanzick v. Tawney,* 44 Or App 59, 62, 605 P2d 297 (1980), *rev den* 288 Or 667 (1980).

■■ In *McEwen v. Ortho Pharmaceutical,* 270 Or 375, 385, 528 P2d 522 (1974), the plaintiff, a patient, brought an action against the drug company for its failure to make timely and adequate warnings about the dangers of oral contraceptives. The court stated that

"[i]t is well settled * * * that the manufacturer of ethical drugs bears the additional duty [beyond that of guarding against defects in manufacture and insuring the efficacy of the drugs] of making timely and adequate warnings to the medical profession of any dangerous side effects produced by its drugs of which it knows, or has reason to know."[1]

---

[1] As plaintiff notes, the Food & Drug Administration imposes a similar duty. *See* 21 CFR § 1.106.

The court went on to hold that

> "[a]lthough the duty of the ethical drug manufacturer is to warn the doctor, rather than the patient, the manufacturer is directly liable to the patient for a breach of such duty. * * *" *Id.,* at 386-387.

Defendant in the present case acknowledges its duty to warn the plaintiff, but contends that its duty is solely for the protection of the patient and, therefore, breach of the duty gives rise to a cause of action in the patient alone. The question we must answer is whether a drug manufacturer's duty to inform physicians about the hazards of prescription drugs for the protection of the physicians' patients also protects the physician from the type of harm alleged here.

■        "Duty" is, for the most part, a question of policy. As the court in *Brennen* noted, whether a duty exists "is simply an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Brennen v. City of Eugene, supra,* 285 Or at 406. *See also Mezyk v. National Repossessions, Inc.,* 241 Or 333, 336, 405 P2d 840 (1965); Prosser, Law of Torts, 325-326 (4th ed 1971). The scope of the duty owed is governed, *inter alia,* by the concept of "foreseeability."[2] A defendant is not liable if the injury the plaintiff suffers is not the reasonably foreseeable consequence of defendant's acts. *Brennen v. City of Eugene, supra,* 285 Or at 406; *McEvoy v. Helikson,* 277 Or 781, 562 P2d 540 (1977).

■        A drug manufacturer's duty, as described in *Mc-Ewen,* is a duty to adequately inform doctors of the harm associated with prescription drugs. Compliance with this duty

> "* * * enables the prescribing physician to balance the risk of possible harm against the benefits to be gained by the patient's use of that drug. Moreover, as observed by the court in *Sterling Drug, Inc. v. Cornish,* [370 F2d 82 (8th Cir 1966)] at 85:
>
>> "* * *[T]he purchaser's doctor is a learned intermediary between the purchaser and the manufacturer.

---

[2] Negligence also involves a question of foreseeability. *See Allen v. Shiroma/Leathers,* 266 Or 567, 570 n 1, 514 P2d 545 (1973).

> If the doctor is properly warned of the possibility of a side effect in some patients, and is advised of the symptoms normally accompanying the side effect, there is an excellent chance that injury to the patient can be avoided. This is particularly true if the injury takes place slowly * * *.' "
> *McEwen v. Ortho Pharmecutical, supra,* 270 Or at 387.

It is certainly foreseeable that, because a doctor is not adequately and completely informed about the hazards of a particular drug, he will prescribe an inappropriate or harmful drug for a patient or will continue to prescribe it in the face of harm which he believes will be only temporary. We think it equally foreseeable in the present day that, as a result of the patient's injury, the treating or prescribing doctor may be exposed to a claim of liability and suffer damage to his reputation, earning capacity and income with or without a formal claim being brought by the patient, because of the appearance of negligence created by the injury to the patient. In this case, the defendant does not seriously dispute the foreseeability of plaintiff's injuries.

■　Although plaintiff's injuries are foreseeable, we must still decide if, as a matter of policy, the duty to inform plaintiff should include a duty, where the information is inadequate, to protect him against these particular foreseeable harms. We conclude that it should. A special relationship exists between a doctor and a drug manufacturer. The doctor, in treating and prescribing drugs for patients, must rely on the drug company to inform him about the efficacy and use of various drugs. He expects to be told of any limits on their use and of any known harmful side effects. The court in *McEwen* made it clear that the doctor has a right to rely on the drug company and that the drug company has a corresponding duty to keep itself and the doctor informed of hazards associated with its prescription drugs. This duty is a necessary one. Doctors are not capable of testing and studying the effects of the various drugs they use; they must rely on the manufacturers. We hold that, because of this reasonable reliance and expectation, a doctor is entitled to protection against foreseeable harm he may suffer because he prescribes a particular drug without full awareness of its potential harm to his patients, where the

doctor's lack of awareness is due to a breach of the duty owed to him by the drug's manufacturer.

## 2. Breach

The next question is whether the plaintiff has alleged facts from which it can be inferred that the defendant in fact breached its duty to plaintiff in this case. Plaintiff claims that the defendant both failed to inform him and affirmatively misinformed him about the effects Myambutol would have on an individual's vision. This adequately alleges that a breach of defendant's duty to inform him about the hazards of the drug in question occurred. *See Brennen v. City of Eugene, supra,* 285 Or at 412-413.

## 3. Cause in Fact

The defendant's breach of duty constitutes actionable negligence only if it was the cause in fact of the plaintiff's injuries. In order to state a cause of action in negligence, plaintiff's complaint must allege facts which establish that defendant's failure to adequately inform plaintiff about the drug Myambutol was a substantial factor in causing plaintiff's harm. *See Yanzick v. Tawney, supra,* 44 Or App at 64. Plaintiff alleges that he treated his patient with the drug Myambutol and that, as a result, she suffered problems with her vision. He claims that he continued the treatment despite these problems because of the information supplied to him by defendant, *i.e.,* that the loss of vision was reversible upon withdrawal of the drug. Contrary to what he had been led to expect, the patient suffered a permanent loss of vision. Plaintiff further alleges that this injury, due to defendant's breach of duty to him, caused plaintiff to be subjected to a claim of liability and a resulting settlement, and caused his competency as a doctor to be questioned so that, with or without the lawsuit, there was damage to his professional reputation in the community, a consequential impairment of his earning capacity, and a loss of income. These allegations sufficiently allege that defendant's breach of duty was a substantial factor in causing injury to plaintiff.

## 4. Foreseeability

In order for there to be a valid cause of action in negligence, damages suffered must not only be caused by

the defendant's actions; they must also be foreseeable. *Yanzick v. Tawney, supra,* 44 Or App at 64-65, and cases cited therein. Although foreseeability is an element of negligence, it need not be specifically alleged.

> "[A] general allegation of negligence is sufficient and may be supported on trial by proof sufficient to satisfy the requirement of foreseeability." *McEvoy v. Helikson, supra,* 277 Or at 787.

As previously noted, the kinds of damage alleged here were foreseeable.

## 5. Damages

■ Finally, we come to the issue of damages. Although a plaintiff establishes a defendant's negligence, he still cannot recover if the damage alleged is not "legally cognizable." *Brennen v. City of Eugene, supra,* 285 Or at 405; *see also McEvoy v. Helikson, supra,* 277 Or at 788-789. We shall deal with various elements of plaintiff's alleged damages separately.

### a. Settlement

We first consider the money paid by plaintiff in settlement of Mrs. Benton's claim of negligence against him. This sum, an indirect result of defendant's negligence, directly resulted from the lawsuit brought by the patient against plaintiff. Thus, we analyze this element of damages as resulting from the lawsuit.

The Restatement of Torts provides that:

> "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees *and other expenditures thereby suffered or incurred* in the earlier action." Restatement (Second) of Torts 492, § 914(2) (1979) (Emphasis supplied).

The Oregon Supreme Court has adopted this rule of damages. *See, e.g., Osborne v. Hay,* 284 Or 133, 585 P2d 674 (1978); *Kamyr, Inc. v. Boise Cascade Corp.,* 268 Or 130, 519 P2d 1031 (1974); *US Fire Ins. Co. v. Chrysler Motors,* 264 Or 362, 505 P2d 1137 (1973); *Huffstutter v. Lind,* 250 Or 295, 442 P2d 227 (1968); *Hoague v. Westlund,* 43 Or App 435,

602 P2d 1147 (1979); *see also* 25 CJS Damages 787, § 50 e (1966); McCormick, Damages, 247, § 67 (1935).[3]

Having established the general proposition that a plaintiff may be entitled to recover his expenses incurred in defending a prior lawsuit, we must now assess the more particular issue: May this plaintiff, on the allegations of this pleading, recover for the $100,000 settlement as a part of such expenses?[4]

Under some circumstances, even the amount of a judgment obtained against a party may be recoverable. As explained in the Restatement (Second) of Torts 493, § 914, comment (b):

"b. The rule stated in this Subsection applies when the preceding action was brought against the present plaintiff either by a third person or by the state, and also when the present plaintiff has been led by the defendant's tort to take legal proceedings against a third person. When a cause of action or an alleged cause of action against the defendant in a proceeding exists only because of a tort of another, the defendant can notify the other to defend the proceeding and if the other fails to defend the defendant can either defend, subsequently recovering all the reasonable expenses of the defense, or refuse to defend, in which case he can recover from the tortfeasor the amount of any judgment obtained against him."

Applying the language of the Restatement to the present case, plaintiff has neither defended nor refused to defend. He has adopted a middle ground by settling. However, plaintiff has not, in his pleadings set out *ante,* pled that his settlement with Mrs. Benton for $100,000 was *reasonable.* In fact, his pleadings indicate that he is blameless for Mrs. Benton's problem. Taken strictly on its face, therefore, the complaint pled the bestowal of a $100,000 gift on Mrs. Benton, for which defendant could not fairly be held liable.

---

[3] Such a rule is not a rule of indemnity. Plaintiff does not seek recovery because he and the defendant are both responsible to Mrs. Benton and, as between the two of them, the defendant is more liable. Rather, he claims that the defendant's negligent injury of his patient caused her to mistakenly sue him and that, as a result, the defendant is responsible for the expenses incurred by him because of the prior lawsuit. *See Kamyr, Inc. v. Boise Cascade Corp., supra,* 268 Or at 135-136.

[4] For some reason, plaintiff does not seek his costs and/or attorney fees resulting from the lawsuit; he seeks only the amount of the settlement.

On the present state of the pleadings, therefore, the trial court's ruling as to this element of plaintiff's alleged damages is technically correct. However, as we indicate *post,* this matter is being remanded. Should plaintiff allege, as he may be able to do (and should be permitted to do) on remand, that the amount paid to Mrs. Benton in settlement was reasonable, we perceive no doctrinal justification for denying plaintiff recovery as to this element of his alleged damages.

### b. Other Elements

■ We turn now to plaintiff's claims for general damages for injury to his professional reputation and earning capacity, and specific damages for lost income.

The Restatement and cases discussed above do not deal with a situation in which a plaintiff, who has been subjected to a claim of liability through the tort of another, claims damages beyond those incurred in defending the earlier action. The language of the analysis used would seem to limit recovery to those expenses incurred or suffered in the earlier action. *See* Restatement (Second) of Torts 492, § 914(2) (1979), *supra.* However, we see no reason for denying recovery for those further damages which are the *foreseeable* result of defendant's negligence, even where they are of the kind claimed here.

Unfortunately, defendant does not in its brief discuss each separate element of plaintiff's claim for damages but, instead, relies upon *O'Toole v. Franklin,* 279 Or 513, 569 P2d 561 (1977), for the proposition that plaintiff cannot recover damages here absent some sort of "special injury."[5] Defendant is correct in arguing that *O'Toole,* which was an action by doctors for the alleged wrongful initiation of a civil action, does require that a plaintiff in such a case suffer some "special injury" from the action which had been brought against him which would not be common to all those against whom malpractice claims are brought. What defendant fails to recognize, however, is that *O'Toole's* result was a consequence of the fact that the defendants in that case had been the plaintiff and counsel for the plaintiff in the earlier action. Requiring "special injury" served the salutory policy purpose of ensuring that

---

[5] Plaintiff has alleged no special injury.

those who honestly believe they have claims will be able to seek redress in the courts without fear of an immediate lawsuit should their hopes prove misplaced. As the Supreme Court put it,

> "* * * The question is not whether a plaintiff should sue only in good faith, but under what circumstances he must be prepared to defend his good faith in a countersuit." *Id.,* at 515.

In the present case, the defendant was not the former plaintiff. Protection of defendant's access to the courts does not require a rule of "special injury." *O'Toole* is not in point.

**15.**    As noted, defendant has not separately attacked the remaining elements of plaintiff's alleged damages. We think that, under the facts alleged in plaintiff's complaint, these other injuries to plaintiff were as foreseeable to plaintiff as was Mrs. Benton's lawsuit. Thus, subject to the usual rigors of proof with respect to the fact and amount of damages, we conclude that plaintiff can recover for the economic losses alleged herein, provided he establishes the other elements of his claim. *See State ex rel Western Seed v. Campbell,* 250 Or 262, 269-270, 442 P2d 215 (1967), *cert den* 393 US 1093 (1969). Of course, he cannot recover for both loss of income and loss of earning capacity for the same period of time.

### c. Professional Reputation

■    Finally, we turn to plaintiff's claim for loss to his professional reputation. As already noted, defendant has not separately addressed this element of plaintiff's claim but has, instead, mistakenly relied upon *O'Toole v. Franklin, supra.* As we view it, the question here is one of foreseeability, *i.e.,* should defendant reasonably have known that plaintiff's reputation would be damaged if he prescribed defendant's drug under the circumstances of this case. While we regard this element of damages as the most marginal one, we hold that here, too, plaintiff has made out a sufficient claim to entitle him to go to trial.

For the foregoing reasons, we conclude that the trial court's disposition of the negligence count was in error.

## FRAUDULENT MISREPRESENTATION

Plaintiff's second cause of action is framed in terms of fraudulent misrepresentation. In addition to the facts alleged in the first count, plaintiff alleges that the defendant deliberately misrepresented the effects of the drug Myambutol as follows:

"In the information published to physicians, defendant represented:

"1) That any loss of vision was apparently reversible upon withdrawal of the medication;

"2) That 'in controlled studies, the frequency and magnitude of decreases of visual accuity among patients being treated with Ethambutol Hydrochloride were not higher than patients on regimens not containing Ethambutol Hydrochloride,' when the defendant knew or in the exercise of reasonable care should have known that the referenced controlled studies were not comparable to the dose or duration of therapy recommended by the defendants;

"3) That the physician should look for a cause other than Myambutol to explain the patient's loss of vision and to discontinue Myambutol only if no other cause of visual loss could be found;

"when the defendant knew these representations were not accurate. Further, defendant failed to disclose its knowledge that the drug Myambutol could cause optic atrophy and hence permanent loss of vision."

Plaintiff claims that defendant made these representations with the intent that physicians, including plaintiff, rely on them, that plaintiff did, in fact, rely on these representations and had no knowledge of their inaccuracy. Plaintiff further claims that, as a result of defendant's representations and his reliance on them, he was exposed to a claim for damages and incurred a loss in settlement of that claim and suffered damage to his professional reputation, earning capacity and income.

In order to establish actionable fraud, the plaintiff must plead and prove the following elements:

"1. A representation;

"2. Its falsity;

"3. Its materiality;

"4. The speaker's knowledge of its falsity or ignorance of its truth;

"5.   His intent that it would be acted on by the person and in the manner reasonably contemplated;

"6.   The hearer's ignorance of its falsity;

"7.   His reliance on its truth;

"8.   His right to rely thereon;

"9.   His consequent and proximate injury." *Webb v. Clark,* 274 Or 387, 391, 546 P2d 1078 (1976).

■   Plaintiff's complaint states the necessary elements. He claims that the defendant made certain representations knowing that these representations were inaccurate. He claims further that the defendant failed to disclose a crucial fact about the drug Myambutol, *viz.,* that it could cause permanent loss of vision. Such a concealment of a known material fact may constitute an element of actionable fraud. *Milliken v. Green,* 283 Or 283, 285, 583 P2d 548 (1978).

We have already discussed the relationship between doctors and drug companies and the latter's duty to inform doctors adequately of the properties and hazards of their prescription drugs. Plaintiff alleges that he had no knowledge of the inaccuracy of defendant's representations and relied on their accuracy in treating his patient Mabel Benton. He continued her treatment with Myambutol even though she began to experience vision problems because the defendant's information assured him that any loss of vision would be temporary. Such representations were clearly material to plaintiff's decision to use and continue to use the drug.

■ ■   In order to state a valid claim for fraud, there must also be some substantial causal connection between the plaintiff's injury and defendant's actions. *Criqui v. Pearl Music Company,* 41 Or App 511, 599 P2d 1177, *rev den* 288 Or 173 (1979).

"In general, with only a few exceptions, the courts have restricted recovery to those damages which might foreseeably be expected to follow from the character of the misrepresentation itself." *Id.,* at 518, quoting from Prosser, Law of Torts, 732, § 110 (4th ed 1971).

These requirements of causation and foreseeability are no different analytically from those discussed in the negligence context. We have already concluded that the injury to plaintiff was within that range of harm to be expected

from defendant's actions. A jury could find that the damages suffered were the foreseeable result of defendant's representations.

██ ██ We turn now to the damages themselves. Our discussions under the negligence cause of action with respect to the sums incurred as a result of satisfying Mrs. Benton's claim against plaintiff applies with equal force to the claim of intentional misrepresentations. Plaintiff is entitled to recovery if he establishes that defendant's action caused him to become subject to a claim of liability and that the resulting settlement was reasonable.[6] *See* Restatement (Second) of Torts 492, § 914(2) (1979); *Osborne v. Hay, supra,* 284 Or 133. The intangible economic losses claimed by plaintiff, *viz.,* impairment of earning capacity and loss of income, have traditionally been the kind of damages recoverable in fraud actions and we see no reason why, if they are proved with reasonable certainty, plaintiff cannot recover them in this context.[7] In *Dizick v. Umpqua Community College,* 287 Or 303, 312, 599 P2d 444 (1979), the court stated that

"* * * when the alleged fraud does not involve the sale of property, the proper measure of damages must be flexible to compensate plaintiff for whatever loss he has suffered."

Recovery is not limited to "out-of-pocket" or "benefit of the bargain" damages. *See also Criqui v. Pearl Music Company, supra,* 41 Or App at 511; Prosser, Law of Torts, 735, § 110 (4th ed 1971).

██ Plaintiff also seeks punitive damages in the sum of $5,000,000. He alleges that defendant's breach of duty and misrepresentations manifest, and were made in, deliberate disregard of the rights and welfare of others. If these allegations are established at trial, plaintiff is entitled to recover punitive damages. *See Chamberlain v. Jim Fisher Motors, Inc.,* 282 Or 229, 578 P2d 1225 (1978).

---

[6] We reject plaintiff's characterization of the sum paid in settlement as out-of-pocket losses.

[7] The discussion in the negligence context with respect to how to view these damages, *i.e.,* as flowing from the lawsuit, is equally applicable to the action for fraud.

We conclude that plaintiff has stated a cause of action for both negligence and fraudulent misrepresentation.

Reversed and remanded for trial.