Argued and submitted December 10, 1980; resubmitted
in banc June 9, affirmed June 22, reconsideration denied September 9,
petition for review allowed October 20, 1981 (291 Or 771)

NORWEST,
*Appellant,*

*v.*

PRESBYTERIAN INTERCOMMUNITY
HOSPITAL et al,
*Respondents.*

(No. 80-374L, CA 17847)

631 P2d 1377

Richard P. Noble, Portland, argued the cause for appellant. With him on the briefs was Kathryn H. Clarke, Portland.

Stanley C. Jones, Klamath Falls, argued the cause for respondent Presbyterian Intercommunity Hospital. With him on the brief was Giacomini, Jones & Associates, Klamath Falls.

William L. Hallmark, Portland, argued the cause for respondent Kenneth Tuttle, M. D.. With him on the brief were Lang, Klein, Wolf, Smith, Griffith & Hallmark, and Margaret H. Leek Leiberan, Portland.

GILLETTE, J.

Roberts, J., dissenting.

**GILLETTE, J.**

Plaintiff, a minor child, seeks recovery for the loss of his mother's society, companionship, support and education as a result of defendants' negligent treatment which resulted in permanent brain damage to the mother. Defendants moved to dismiss, based upon the theory that there is no cause of action in Oregon for loss of "parental consortium." Plaintiff appeals from the resulting order of the trial court dismissing his complaint for failure to state ultimate facts sufficient to constitute a claim. We affirm.

Plaintiff's complaint alleges that he is the son of Shirlene Norwest, who underwent surgery for removal of her gall bladder at defendant hospital under the surgical care of the defendant doctor. It alleges that defendants were negligent in failing to discover or treat a condition of hypocalcemia which developed in Shirlene Norwest and which resulted in severe brain damage requiring a lifetime of custodial care. Plaintiff further alleges that he has been deprived of his mother's society, companionship, support and education and has incurred an obligation to support his mother after her own funds are exhausted. He alleges further that defendant hospital is estopped to deny its negligence because a judgment already entered in favor of Shirlene Norwest in an action brought on her behalf has determined the hospital's negligence.

We are called upon to decide if a child may recover damages from a third party whose negligence results in serious injury to a parent and thereby seriously interferes with the parent-child relationship. The courts of this state have never had occasion to consider whether a child has a cause of action for this loss of parental society, or what has been termed "parental consortium." However, the question here is not one of authority. There can be no doubt that this court has the authority to recognize previously unrecognized rights of recovery or new forms of injury. *See, e.g., Oksenholt v. Lederle Laboratories,* 51 Or App 419, 625 P2d 1357 (1981); *Campbell v. Carpenter,* 279 Or 237, 566 P2d 893 (1977) (tavern owner may be liable in negligence for actions caused to third party injured by intoxicated customer); *Hinish v. Meier and Frank,* 166 Or 482, 113 P2d 438 (1941), (action for invasion of privacy); *Cowgill v. Boock,*

189 Or 282, 218 P2d 445 (1950) (minor child may sue parent for wilful or malicious tort); *Apitz v. Dames,* 205 Or 242, 287 P2d 585 (1955) (wife has action against husband for intentional injuries). The question, rather, is one of judicial policy. For the reasons that follow, we conclude that an action for loss of parental consortium will not lie.

The history of the legal recognition of the importance of family relationships and the protection of those relationships has, in Oregon at least, primarily been a history of legislative, not judicial, change. Initially, at common law, there existed only the action *per quod consortium* in the husband; the wife, having little more legal status than a chattel, had no such right of action. Oregon generally abolished women's legal disabilities (with the interesting exceptions of the right to vote and the right to hold office) by the Married Women's Act of 1880, Or Laws 1880, § 1, which provided,

> "All laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband are hereby repealed: Provided, that this act shall not confer the right to vote or hold office upon the wife, except as is otherwise provided by law; and for any unjust usurpation of her property or natural rights she shall have the same right to appeal in her own name alone to the courts of law or equity for redress that the husband has."

Even then, however, and in spite of the recognition of the right of a husband to maintain an action for loss of consortium as recognized in *Elling v. Blake-McFall Co.,* 85 Or 91, 166 P 57 (1917), the Oregon courts consistently declined to expand the common law to recognize a similar right in the wife. *Kosciolek v. Portland Ry L & P Co.,* 81 Or 517, 160 P 132 (1916); *Sheard v. Oregon Electric Ry Co.,* 137 Or 341, 2 P2d 916 (1931). Finally, the rule was changed legislatively in 1941, when the Married Women's Act was amended to read,

> "All laws which impose or recognize civil disabilities upon a wife which are not imposed or recognized as existing as to the husband hereby are repealed, and all civil rights belonging to the husband not heretofore conferred upon the wife, or which she does not have at common law, hereby are conferred upon her, including, among other

things, the right of action for loss of consortium of her husband; and for any unjust usurpation of her property or natural or civil rights she shall have the same right to appeal in her own name alone to the courts of law or equity for redress that the husband has." Oregon Laws 1941, ch 228, p 356.

As was true with respect to the development of a wife's right to bring an action for loss of consortium, legislative action was necessary to establish a right of a mother (as opposed to the father) to bring an action for an injury to her child. *See* ORS 30.010. And, as was true for the parent, so legislative development has been the key to the availability of actions for the benefit of the child.

In Oregon, the significance to the child of the parent-child relationship has been recognized in the fact that children now have a cause of action for wrongful death of a parent. ORS 30.020.[1] There are, however, significant limits to the child's separate rights, and these limits are the product of judicial, not legislative, decision making. For example, the Supreme Court, in *Burnette v. Wahl,* 284 Or 705, 588 P2d 1105 (1978), disallowed a tort action by a child against its mother for damage incurred because of the failure of the mother to provide parental care, nurturance and companionship. The court, in refusing to allow the action, noted, "the legislature recognizing the necessity of parental nurture, support and physical care for children, has enacted a vast array of laws for the purpose of protecting or vindicating those rights. * * *" *Id.,* at 709. The court went on to say,

"* * * [T]he statutory enactments demonstrate that the legislature has put its mind to the deprivations of which plaintiff children are alleged to be victims and has attempted to remedy such situations by enacting a vast panoply of procedures, both civil and criminal, to ensure that children receive proper nurturing, support and physical care. It has never undertaken to establish, however, a cause of action for damages for any emotional injury to the child which may have been caused by a parent's refusal to

---

[1] Pursuant to ORS 30.020 the action must be brought by the decedent's personal representative. The spouse and children of the decedent are, however, the "real parties in interest." *Christensen v. Epley,* 287 Or 539, 545, 601 P2d 1216 (1979). That action includes damages for pecuniary loss and for "loss of the society, companionship and services of the decedent; * * *." ORS 30.020(2)(d).

provide these services. This failure of the legislature to act is significant because this is not a field of recovery which has heretofore been recognized by courts, and it would therefore be natural for it to have provided such a remedy if it thought it was wise in view of the social problem it attempts to solve and the statutory provisions it has enacted for that purpose. * * *" *Id.,* at 710.

The court further noted,

"* * * [C]ourts must look carefully not only at the particular statute establishing the right or duty but at all statutes which might bear either directly or indirectly on the legislative purpose. If there is any chance that invasion into the field by the court's establishment of a civil cause of action might interfere with the total legislative scheme, courts should err on the side of non-intrusion because it is always possible for the legislature to establish such a civil cause of action if it desires. Courts have no omnipotence in the field of planning, particularly social planning of the kind involved here. Courts should exercise restraint in fields in which the legislature has attempted fairly comprehensive social regulations." *Id.,* at 712.

Even a prominent decision recognizing a certain cause of action in a child also recognized the role of the legislature in establishing the basis for that judicially recognized right. In allowing an action by a child for injuries received before birth, the Supreme Court in *Mallison v. Pomeroy,* 205 Or 690, 696, 291 P2d 225 (1955), quoted with approval:

" 'Negligence law is common law, and the common law has been molded and changed and brought up-to-date in many another case.' " (Citing *Woods v. Lancet,* 303 NY 349, 102 NE2d 691, 27 ALR2d 1250 (1951)).

The court then went on to note, however, that the legislature had recognized the unborn child as a separate entity by providing protection for the child's property rights and against criminal conduct directed at the unborn child. In view of that legislative foundation, the court concluded that there was no logical reason that the unborn child should not also be protected against injury by tort. *Id.,* at 696-697.

The foregoing statutory and decisional history establishes two points: (1) the general availability of a right of action for loss of consortium or the loss of companionship

has been expanded through the years through the legislative, not the judicial, process; (2) under closely analogous circumstances, the Oregon Supreme Court has refused to create a cause of action where the legislative scheme in the area did not already include it. We think this history justifies, if it does not direct, our conclusion here: The creation of a cause of action such as that sought by the plaintiff in this case must await legislative enactment.

Like the Supreme Court in *Mallison,* we regard the legislature's involvement in this area as pertinent to our own inquiry. For instance, as already demonstrated, the legislature has recognized the interest of a child and the parent/child relationship when the parent dies as a result of the wrongful action of another. ORS 30.020(1). At the same time, however, it is apparent that providing for an action for the benefit of a child due to a *death* of a parent is a limited decision by the legislature, as opposed to the potentially open ended authority sought from this court which would allow recoveries even where the parent was not killed. We are not prepared to go all the way with a legal approach where the legislature, that portion of the government in which such policy decisions are commonly made, has chosen to make less than the entire trip.

As we view it, the legislature's decision in allowing wrongful death actions for the benefit of children while not authorizing other kinds of actions is precisely the kind of policy and interest balancing to which this court should defer. We think that this is particularly true where, as here, in addition to the legislature's limited acceptance of the right of children to bring suit where their relationship with their parent or parents has suffered injury, the legislature has also thoroughly occupied itself in the area of the family by determining the availability of actions for loss of consortium for both spouses. *See* ORS 108.100. Where the legislature has thoroughly involved itself in an area of the law and where its decisions in that area appear to set discreet boundaries, we think that it should be left to the legislature to change those boundaries, if they are to be changed, and to define the new ones. This is not to say that there may not be some justice in the abstract sense in permitting recovery in cases such as the one before us. It is

to say, however, that there are other powers than ours which are involved in the establishment of causes of action in Oregon and that the question involved in this case should be submitted to those other powers.

The dissent makes much of the statutory right of a child to recover for the wrongful death of a parent, including damages "for loss of the society, companionship and services of the decedent; * * *" (ORS 30.020(2)(d)). We think, however, that there are several problems with the analogy it attempts to draw:

■■ (1) It is not the *child* who has an action for wrongful death under ORS 30.020. There is only one plaintiff in a wrongful death action, and that is the personal representative, who brings the action for the benefit of the surviving spouse, surviving children, parents and other individuals, if any, who under the law of intestate succession would be entitled to inherit the personal property of the decedent. Among the elements of damages which may be awarded are those for loss of society, companionship and services. There is, however, no direct award to the children (who, incidentally, need not be minors). After a settlement or judgment, the damages are apportioned among the various beneficiaries in a separate proceeding at which each of the persons claiming entitlement puts on evidence as to his or her damage resulting of the death. Theoretically, the aggregate damages proved by all claimants could exceed the amount awarded in the principal lawsuit, in which case they are apportioned on a percentage basis.

■ (2) More importantly, an action for wrongful death may not be maintained unless "the decedent might have maintained an action, had he lived, against the wrongdoer for injury done by the same act or omission." ORS 30.020(1). In other words, any defense the tortfeasor has or would have against the decedent is available against the personal representative. The action is derivative, not independent. That is not the case in an action for loss of consortium: it is an independent, separate injury to the spouse of the victim giving rise to a separate and independent action for damages resulting from that injury. It makes no difference that the victim spouse could not recover from the tortfeasor. *See Naber v. Thompson,* 274 Or 309, 546 P2d

467 (1976), *overruling Whang v. Hong,* 206 Or 125 (which held that a parent's action for loss of services of a minor child was derivative of the child's right and, if the child could not recover, neither could the parent).

(3) The dissenting opinion suggestion that we need not allow each of several children to maintain separate actions, but could require that they be joined in one action. We know of no basis upon which we could require such joinder, absent legislation.

Because our conclusion in this case is based upon what we perceive as a long standing pattern of legislative as opposed to judicial action in this area, we are not required to consider the other arguments advanced by defendant as alternative bases for affirming the trial court's disposition of this case.[2]

■ The judgment of the trial court dismissing the plaintiff's complaint is affirmed.

**ROBERTS, J.,** dissenting.

I dissent because I do not agree with the statement in the majority opinion that "[t]he history of the legal recognition of the importance of family relationships and the protection of those relationships has, in Oregon at least, been a history of legislative, not judicial, change." 52 Or App at 856.

The legislature *has* recognized and protected family relationships in the statutes relied upon by the majority: ORS 30.010 (the right of a mother to bring an action for loss of consortium); ORS 30.010 (the right of a mother to bring an action for injury to her child); and ORS 30.020 (the right of a child to bring an action for the wrongful death of

---

[2] The other bases, some or all of which might also be a proper basis for the trial court's ruling, are: (1) Lack of legal entitlement, *i.e.,* since children do not have the legal right to insist that their own parents give them companionship, society and affection, it would incongruous to permit an action against third parties for denying to the children that which they were not entitled to insist upon. *See Burnette v. Wahl, supra.* (2) Excessive costs of allowing such claims, *i.e.,* a concern that the kind of damages sought here are difficult to limit both in terms of who may seek them and for whose loss they may be sought. (3) Practical difficulties, *e.g.,* how severe must the injury be to the parent before it may be said to deprive a child of at least some of the companionship the child would have otherwise enjoyed with the parent?

a parent). The Supreme Court *has also* recognized new causes of action in which family relationships are involved. *See Cowgill v. Boock,* 189 Or 282, 218 P2d 445 (1950) (minor child may sue parent for willful or malicious tort); *Apitz v. Dames,* 205 Or 242, 287 P2d 585 (1955) (wife has action against husband for intentional injuries); *Mallison v. Pomeroy,* 205 Or 690, 291 P2d 225 (1955) (a child may sue for injuries received before birth).

The statutes cited by the majority do not represent the kind of statutory scheme referred to in *Burnette v. Wahl,* 284 Or 705, 588 P2d 1105 (1978), upon which the majority also relies. It cannot be said here, as the Supreme Court said in *Burnette,* that

" * * * the statutory enactments demonstrate that the legislature has put its mind to the deprivations of which plaintiff * * * [is] alleged to be [the victim] and has attempted to remedy such situations by enacting a vast panoply of procedures, both civil and criminal * * *." *Burnette v. Wahl, supra,* at 710.

Nor can it be said that judicial recognition of this action might "* * * interfere with the total legislative scheme * * *." *Id* at 712.

I agree with the majority's analysis of *Mallison v. Pomeroy, supra,* and I believe this case presents a situation like *Mallison* in which the Supreme Court recognized an action by a child for injuries received before birth. The court noted that the legislature had made certain enactments regarding the subject of pre-natal injury and concluded that there was no reason that the court should not proceed along the lines established by the legislature. That is what judicial recognition of plaintiff's cause of action would do here. The legislature has recognized the significance of the parent-child relationship and I see no reason why we should not proceed along those established lines, as was done in *Mallison,* in recognizing plaintiff's cause of action.

Negligence law has traditionally been common law and has developed through judicial action. Although the legislature has the prerogative to enact negligence statutes, I do not believe that the courts are precluded from participating in the development of that law unless there is

a demonstrated legislative intention to develop a comprehensive statutory scheme to regulate a particular area of tort law. There is no such comprehensive scheme which would preclude this court from recognizing plaintiff's action.

Because I believe this is a proper subject for the court to consider, it is necessary to evaluate defendants' other contentions that the court should not allow this cause of action.

Under a straightforward analysis of negligence concepts it appears that defendants may be held liable to plaintiff for the damages resulting from their actions. An action for negligence requires that there be a duty and a breach of that duty which was the cause in fact of some legally cognizable damage to plaintiff. *Brennen v. City of Eugene,* 285 Or 401, 405, 591 P2d 719 (1979). As to the concept of duty, the Supreme Court stated in *Brennen:*

> "In negligence law, 'duty' is simply 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' *Mezyk v. National Repossessions,* [241 Or 333, 336, 405 P2d 840 (1965)], *quoting* W. Prosser, Law of Torts 333 (3d ed 1964). As a general rule, the scope of the duty owed is governed by the concept of 'foreseeability,' and a defendant whose act injures another will be held liable for the injury if the injury was a reasonably foreseeable consequence of the act. * * *." 285 Or at 406. *And see Allen v. Shiroma/Leathers,* 266 Or 567, 514 P2d 545 (1973).

I, therefore, look at whether the injury suffered by plaintiff was a reasonably foreseeable consequence of defendants' actions. The question of foreseeability is one for the finder of fact unless

> "* * * plaintiff's injury and the manner of its occurrence was so highly unusual that we can say as a matter of law that a reasonable man, making an inventory of the possibilities of harm which his conduct might produce would not have reasonably expected the injury to occur. Stated in another way, the question is whether the circumstances are out of the range within which a jury could determine that the injury was reasonably foreseeable." (footnote omitted) *Stewart v. Jefferson Plywood Co.,* 255 Or 603, 609-610, 469 P2d 783 (1970).

I conclude that it is entirely possible for a jury to find that defendants could have foreseen that severe injury to Shirlene Norwest caused by their negligence would result in injury to her ability to care for her minor son and thereby cause damage to that son.

The issue of causation is also generally a question of fact. For legal causation to exist the act of the defendant must be a substantial factor in bringing about the injury to the plaintiff. *Brennen v. City of Eugene,* 285 Or at 413; *Campbell v. Carpenter,* 279 Or 237, 566 P2d 893 (1977). There can be no doubt here that under the allegations of plaintiff's complaint defendants' actions were a substantial factor in bringing about the injury alleged.

It is around the question of whether defendants' actions resulted in "some legally cognizable damage to plaintiff," *Brennen v. City of Eugene, supra,* that there may be some controversy in this case. Plaintiff himself did not receive either physical injury or injury to property as a result of defendants' alleged negligence. Recovery by plaintiff depends upon whether the injury plaintiff has alleged to the parent-child relationship resulting from defendants' negligence is a legally cognizable injury. The answer to the question depends in part on the historical development of legal recognition and protection of family relationships, and in part on policy considerations regarding the costs and difficulties of allowing the type of recovery sought here.

Legal recognition of the importance of family relationships and protection of those relationships has developed and changed. As I have indicated, both the courts and the legislature have been active in this process.

Parents also currently have a right of action for injury to a child. ORS 30.010.[1] This action, which originally was only in the father, arose from the conception of the father as master with a right to the services of his children

[1] *Escobedo v. Ward,* 255 Or 85, 464 P2d 698 (1970), limited the damages recoverable under this statute to loss of the services of the child during minority. This limitation was, however, based on the wrongful death statute which at the time of the decision limited damages to "actual pecuniary loss." The continuing validity of that limitation may now be in question since the wrongful death statute has been amended to allow recovery for "loss of the society, companionship and services of the decedent; * * *." ORS 30.020.

much like the original action for loss of consortium. Prosser, Law of Torts § 124, 873 (4th ed 1971). As the legal existence of the wife gained recognition the action developed into one which could be brought by both parents.

The change in the legal status of children has come even more slowly than that of women, with many of the rights of minors being recognized only recently.[2] The significance to the child of the parent-child relationship has been recognized in the fact that children now have a cause of action for the wrongful death of a parent under ORS 30.020.[3] That action includes damages for pecuniary loss and for "loss of the society, companionship and services of the decedent; * * *." ORS 30.020(2)(d).

Although the Supreme Court in *Burnette v. Wahl, supra,* disallowed a tort action by children against their mothers for damages incurred because of the failure to provide parental care, nurture and companionship, the court noted that the legislature has indicated "* * * a strong state policy of requiring the kind of parental nurturing, support and physical care of children which the defendants here are alleged to have denied their children." 284 Or at 712.[4] The concurring and dissenting opinion of Justice Lent in *Burnette* makes special note of the increasing recognition by experts of the importance of the parent-child relationship and the damage that can be done when that relationshp is destroyed.

In addition, this court has noted in custody proceedings that "[c]hildren are entitled to the love, companionship and guidance of both of their parents." *Warren v.*

---

[2] *See, e.g., Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S Ct 733, 21 L Ed 2d 731 (1969); *In re Gualt,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967); *Gallegos v. Colorado,* 370 US 49, 82 S Ct 1209, 8 L Ed 2d 325 (1962); *In Re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970); *Goss v. Lopez,* 419 US 565, 95 S Ct 729, 42 L Ed 2d 725 (1975); *Planned Parenthood of Missouri v. Danforth,* 428 US 52, 96 S Ct 2831, 49 L Ed 2d 788 (1976); *Carey v. Population Services International,* 431 US 678, 97 S Ct 2010, 52 L Ed 2d 675 (1977).

[3] Pursuant to ORS 30.020 the action must be brought by the decedent's personal representative. The spouse and children of the decedent are, however, the "real parties in interest." *Christensen v. Epley,* 287 Or 539, 545 601 P2d 1216 (1979).

[4] *See Burnette v. Wahl, supra* at 709, n.5.

*Warren,* 19 Or App 671, 674, 528 P2d 1088 (1974); and *see Delf and Delf,* 19 Or App 439, 528 P2d 96 (1974).

In light of the significance of the parent-child relationship and the legal recognition of that importance, in conjunction with the fact that the injury for which damages are sought here are recognized in an action for a parent's wrongful death, I conclude that the injury to plaintiff was to a legally cognizable interest.

Despite the fact that plaintiff's cause of action would appear, analytically, to be allowable, this type of claim has not received much acceptance as of yet. Of the jurisdictions which have considered the question, by far the majority have rejected the child's cause of action for loss of parental society.[5] Two states have recently allowed the action, however: Michigan in *Berger v. Weber,* 411 Mich 1, 303 NW 2d 424, (1981), and Massachusetts in *Ferriter v. Daniel O'Connell's Sons, Inc.,* ___ Mass ___, 413 NE2d 690 (1980).[6]

Although courts have recognized the conceded natural justice of a child's claim for loss of parental society[7] and have been aware of the extensive commentary favoring such claims,[8] the claims have generally been denied. Several arguments have been accepted by the various courts which may all be summarized in one word: policy. The

---

[5] *See, e.g., Borer v. American Airlines, Inc.,* 19 Cal 3d 441, 138 Cal Rptr 302, 563 P2d 858 (1977); *Clark v. Suncoast Hospital, Inc.,* 338 So 2d 1117 (Fla Ct App 1976); *Hankins v. Derby,* 211 NW 2d 581 (Iowa 1973); *General Electric Co. v. Bush,* 88 Nev 360, 498 P2d 366 (1972); *Russell v. Salem Transportation Co.,* 61 NJ 502, 295 A2d 862 (1972); *Roth v. Bell,* 24 Wash App 92, 600 P2d 602 (1979); and *see* Anno. 69 ALR 3d 528 and cases cited therein.

[6] The case of *Orrison v. Huang,* Auglaize Co. 78-291 (Ohio, Court of Common Pleas, August 6, 1979) is currently on appeal to the Ohio Court of Appeals. The Court of Common Pleas apparently held that the denial of the cause of action would violate the constitutional rights of the child. An earlier Ohio Court of Appeals case had, however, held that children had no such cause of action. *Gibson v. Johnston,* 144 NE 2d 310 (Ohio Ct App 1956).

[7] *See Hill v. Sibley Memorial Hospital,* 108 F Supp 739 (DDC 1952); *Borer v. American Airlines, Inc., supra; Hankins v. Derby, supra; Hoffman v. Dautel,* 189 Kan 165, 368 P2d 57, (1962); *Russell V. Salem Transportation Co., supra; Duhan v. Milanowski,* 75 Misc 2d 1078, 348 NYS 2d 696 (NY 1973); *see also Ferriter v. Daniel O'Connell's Sons, Inc., supra,* 413 NE2d at 695 n 10.

[8] Prosser has noted the reluctance of courts to allow this type of action and has commented:

policy arguments are well catalogued and reviewed in the California case, *Borer v. American Airlines, Inc.,* 19 Cal 3d 441, 138 Cal Rptr 302, 563 P2d 858 (1977). I will consider the arguments in the groups in which they appear to fall. I perceive four such groups, although many of the arguments are related: I) lack of legal entitlement; II) creation of the cause of action should be left to the legislature; III) excessive costs of allowing such a claim; and IV) practical difficulties.

## I

Although it is true that children in this state do not have a legal right to require that their parents give them the companionship, society and affection whose loss is at stake here, *see, Burnette v. Wahl, supra,* the wrongful death statute does provide for recovery by children of precisely those damages for the death of a parent. ORS 30.020. One of the reasons that there is a reluctance to allow children to sue their parents for failure to provide parental society is concern for interference in family relationships, but that is not present in a cause of action in which a third party is charged with negligent injury to the parent-child relationship. The legislature has recognized that a child has an expectation of parental society which is protected if the parent is killed as a result of the wrongful action of another. That expectation is also appropriately protected when the parent is so severely injured that the parent-child relationship is seriously interfered with even if the parent remains alive.

## II

The majority decision is based on the argument that the creation of this type of action is better left to the legislature than to the courts. I have already discussed why I believe the majority is mistaken. The legislature has

---

"It is not easy to understand and appreciate this reluctance to compensate the child who has been deprived of the care, companionship and education of his mother, or for that matter his father, through the defendant's negligence. This is surely a genuine injury, and a serious one, * * *." Prosser, Law of Torts § 125, 896-97 (4th ed 1971).

*See* Love, Tortious Interference with the Parent-Child Relationship, 51 Ind LJ 590 (1976); Note, The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent, 56 BUL Rev 722 (1976); Comment, The Child's Claim for Loss of Consortium Damages, 73 San Diego L Rev 231 (1975). *See also Ferriter v. Daniel O'Connell's Sons, Inc., supra,* 413 NE2d at 695 n 11.

recognized the interest of the child in the parent-child relationship when the parent dies as the result of the wrongful action of another. I see no reason why the child's interest in the parent-child relationship should not be protected when the parent is seriously injured by the wrongful action of another.

## III

The next group of arguments concerns the costs that it is suggested will be incurred by allowing this type of action. This includes increased judicial costs suggested by the possibility of multiple suits by numerous plaintiffs, not only numerous children of an injured parent but also other more distant family members or even "friends and neighbors" making claims for loss of society and companionship. It also involves the issue of how the line will be drawn as far as the extent of injury to the parent for which recovery will be allowed. Finally, the argument is made that allowing this type of action would result in excessive damages being assessed against a defendant and would cause an increase in insurance costs which will be passed on to society as a whole.

As to the question of who can recover, my analysis of whether there has been an injury to a legally cognizable interest would confine this action to the loss of parental society. The parent-child relationship is of particular importance and has been so recognized. Other persons would have a much more difficult time establishing the kind of legally protected interest that justifies recovery in the parent-child relationship.

We are not presented here with the situation of many children suing for loss of parental society. If there is more than one child of an injured parent, their actions should be joined if at all possible. I do not believe, however, that the fact that more than one person is damaged by a defendant's negligence should relieve that defendant of liability in this situation any more than if the defendant negligently ran into a school bus.[9]

---

[9] On this point, the Michigan court cited with approval the following language from its Court of Appeals decision:

"[T]he rights of a new class of tort plaintiffs should be forthrightly judged on their own merits, rather than engaging in gloomy speculation as to where it will all end. (Citation omitted.) 82 Mich App 199, 210, 267 NW2d 124." *Berger v. Weber, supra,* 303 NW2d at 426.

The issue of increased litigation is also raised in the question of what type of injury to a parent will justify a child's recovery of damages for loss of parental society. Although certain definitional problems may be encountered, it would appear that to have a measurable impact on the parent-child relationship so as to interfere with the companionship, society and education normally given, injury to the parent would have to be of a serious nature. We are not now presented with a close case and I will not attempt to draw the lines that would have been drawn over time, but note that, as the Supreme Court in *Hinish v. Meier & Frank Co.,* 166 Or 482, 113 P2d 438 (1941), stated when it recognized an action for invasion of privacy:

> "[W]hen a legal principle is pushed to an absurdity, the principle is not abandoned, but the absurdity avoided. The courts are competent, we think, to deal with the difficulties of the sort suggested, and case by case, through the traditional process of inclusion and exclusion, gradually to develop the fullness of the principle and its limitations." 166 Or at 505.

The question of an increase in insurance rates because of the increased liability of negligent defendants is too speculative to be the basis for a decision as to whether the defendants should be held liable here. I believe it is unlikely that courts will be flooded with claims for loss of parental society, any more than they are flooded with claims for loss of spousal consortium.

## IV

The fourth group of arguments submitted in support of the contention that a cause of action for loss of parental society should not be recognized involve what I

---

Justice Mosk in his dissenting opinion in *Borer v. American Airlines, Inc., supra* at 870, reacted to the "floodgates" argument as follows:

"I agree that [a line must be drawn], but I cannot subscribe to the majority's ad terrorem argument for determining the proper place to draw such a line. The majority raise the spectre of liability not only the victim's spouse but also to a Gilbert and Sullivan parade of 'his sisters and his cousins, whom he reckons up by dozens,' then dismiss that possibility with the unimpeachable observation that no one is suggesting that the latter be compensated. The implication lingers, however, that such demands will become irresistible if the rights of the victim's children are recognized in the case at bar. * * * As we summarized in [another case], 'That the law might be urged to move too far * * * is an unacceptable excuse for not moving at all.' "

have termed practical problems. These problems concern the damages claimed and are all somewhat related. Included are the questions of whether the injury to the parent-child relationship incurred is susceptible of recompense in money damages; the difficulty of assessing such damages; and the problem of potential double recovery in allowing damages to the child and the parent for the injury to the relationship between them.

The problem of whether the injuries suffered are compensable in money damages and the problem of assessing such damages would appear to present the same difficulties in this situation as they do in other situations in which monetary damages are sought for a non-monetary loss. As the Michigan court stated:

> "We reject the majority's argument in *Borer* [*v. American Airlines, supra*] that because a child's loss is intangible, money damages are inadequate. This is more a comment on the inadequacy of legal remedies in general than a valid reason for denying recovery to a child. Money cannot purchase eyesight for one who is blinded nor can it truly compensate for intangibles such as pain and suffering or the loss of life. To say that a child cannot be fully compensated for his or her loss does not justify ignoring the loss altogether." *Berger v. Weber,* 267 NW2d at 128-29.

As to the concern about the double recovery, this same problem exists in an action for spousal consortium, and has, apparently been confronted without significant difficulty. I believe that the problems that would arise from this situation are not insurmountable. I agree with the court in *Berger v. Weber, supra,* that the problems could be handled by joinder of the child's cause of action with that of the parent, or by appropriate jury instructions.[10]

I decline to adopt the suggestion by defendants that juries inevitably consider the child's loss in determining the damages to which the parent is entitled. It is true that we often expect the jury to make sophisticated distinctions and draw fine lines. Our jury system is based on the belief that juries are capable of making those distinctions

---

[10] We are presented here with a situation in which plaintiff's mother has already recovered for her injuries. Appropriate jury instructions in the trial of plaintiff's action could be used, however, to prevent an award of damages which overlaps that received by plaintiff's mother.

and drawing those lines under proper instruction from the court. It is clear in this type of case that the child has suffered a real injury and that that injury is distinct from the injury suffered by the parent. I do note, however, that plaintiff here seeks damages for loss of support. As a matter of pecuniary loss, it appears that plaintiff's mother may have recovered damages for the loss of her ability to earn an income and support her child. To the extent that she has recovered for economic loss to the family unit, I would hold that plaintiff here should not be allowed to recover for that loss as well. *See Russell v. Salem Transportaion Co., supra.*

In sum I do not find any of the suggested policy bases for disallowing this cause of action to be persuasive and would hold that plaintiff's complaint states a cause of action.

Thornton, J. and Warden, J., join in this dissent.